IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER FITZGERALD,    :
             :
       Plaintiff,  :    CIVIL ACTION NO. 16-3377
             :
   v.         :
             :
JAMES B. MARTIN, et al.,     :
             :
      Defendants. :

## MEMORANDUM OPINION

Smith, J.                    August 3, 2017

  This action arises from the plaintiff's interaction with non-uniformed law enforcement officers in an unmarked police vehicle while driving, and his subsequent arrest, charge, prosecution, and acquittal from the charges of simple assault, recklessly endangering another person, reckless driving, and careless driving. The plaintiff asserts a constitutional claim against Lehigh County under 42 U.S.C. § 1983 for failure to train and supervise the Lehigh County District Attorney's Office detectives who interacted with and arrested him, as well as constitutional claims pursuant to section 1983 against Lehigh County, the Lehigh County District Attorney, a Lehigh County Assistant District Attorney, and the detectives for malicious prosecution, false arrest, false imprisonment, and conspiracy to violate his civil rights. The plaintiff also brings Pennsylvania state law claims against these defendants for malicious prosecution, false imprisonment, and false arrest.

  Currently before the court are motions to dismiss separately filed by the Lehigh County District Attorney's Office (on behalf of all of the individual Lehigh County District Attorney's Office defendants) and Lehigh County. As detailed below, the court will grant in part and deny in part the Lehigh County District Attorney's Office and Lehigh County motions to dismiss. The

court will also dismiss all claims against the District Attorney's Office defendants and Lehigh County with the exception of (1) the plaintiff's false arrest claim against the detectives who arrested him, and (2) the state law claims against all of the defendants.

## I.        ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff, Christopher Fitzgerald ("Fitzgerald") was driving his fiancée to work on or about August 29, 2014, and their infant child was also a passenger in the vehicle.  Second Amended Complaint ("SAC") at ¶ 31, Doc. No. 34.  At the time, Fitzgerald was a corrections officer at the Lehigh County Department of Corrections, and he frequently received threats from inmates who claimed that their cohorts outside of jail would harm him.  *Id*. at ¶¶ 33-35.  He was also licensed to carry a firearm both in his official capacity as a corrections officer, and in his capacity as a private citizen.  *Id*. at ¶ 35.

While Fitzgerald was driving, a grey Infiniti M35 with heavily tinted windows began to aggressively follow his vehicle.  *Id*. at ¶ 36.  After noticing the Infiniti following his vehicle, Fitzgerald slowed his vehicle and provided the Infiniti with multiple opportunities to go around him.  *Id*. at ¶¶ 37, 40.  The Infiniti did not go around him; instead, it continued to follow him for several minutes.  *Id*. at ¶ 41.  Unknown to Fitzgerald, the driver and passenger of the Infiniti were Lehigh County District Attorney's Office ("Lehigh County D.A.'s Office") Detectives, Christopher Cruz ("Detective Cruz") and Todd Frey ("Detective Frey") (collectively, "Detectives Cruz and Frey"), who were wearing plain clothes at the time.  *Id*. at ¶¶ 39, 45.

After several minutes, Fitzgerald pulled over his vehicle to the curbside of the right lane, rolled down his window, and waited for the Infiniti to pass his vehicle.  *Id*. at ¶ 41.  Instead of passing Fitzgerald, the Infiniti pulled alongside his vehicle, blocked it to prevent it from driving away, and Detective Frey exited the Infiniti and approached Fitzgerald's vehicle.  *Id*. at ¶¶ 42, 44.  Detectives Cruz and Frey did not identify themselves as law enforcement officers.  *Id*. at ¶

46. Fitzgerald remained in his vehicle, drew his firearm, and held it pointed downward at chest level. *Id*. at ¶¶ 47-48.

When Detectives Cruz and Frey saw Fitzgerald's firearm, they reversed their vehicle. *Id*. at ¶ 49. Fitzgerald drove away and Detectives Cruz and Frey resumed their pursuit in the Infiniti. *Id*. at ¶ 50. Shortly thereafter, Fitzgerald pulled into a retail shopping center, where Detectives Cruz and Frey joined with Whitehall Township Police Officers, Michael Marks ("Officer Marks") and Raymond Seiling ("Officer Seiling") (collectively, "Officers Marks and Seiling"), and arrested Fitzgerald and his fiancée. *Id*. at ¶¶ 51, 53. Fitzgerald was charged with two counts of simple assault, two counts of recklessly endangering another person, one count of reckless driving, and one count of careless driving. *Id*. at ¶ 54. Lehigh County prosecuted Fitzgerald, and following a trial on June 1, 2015, Fitzgerald was found not guilty of all charges. *Id*. at ¶¶ 63-64.

Fitzgerald filed the instant lawsuit, asserting claims under 42 U.S.C. §§ 1981, 1983, and 1985(3), as well as under Pennsylvania common law, against Lehigh County District Attorney James Martin ("District Attorney Martin"), the Lehigh County D.A.'s Office, Assistant District Attorney Steven Luksa ("A.D.A. Luksa"), Detectives Cruz and Frey, Lehigh County Chief of Detectives Joseph Stauffer ("Chief Detective Stauffer"), the Whitehall Township Police Department, Chief of the Whitehall Township Police Department, Linda Kulp ("Chief Kulp"), Officers Marks and Seiling, Whitehall Township Mayor Edward Hozza ("Mayor Hozza"), Lehigh County Executive Tom Muller ("Muller"), Lehigh County Department of Corrections Director Edward Sweeney ("Sweeney"), the Lehigh County Department of Corrections, Whitehall Township, Lehigh County, and the Whitehall Township Board of Commissioners, on June 24, 2016. Doc. No. 1. Lehigh County, the Lehigh County Department of Corrections, Sweeney, and Muller filed a motion to dismiss on August 9, 2016. Doc. No. 8. Whitehall

Township, the Whitehall Township Police Department, Chief Kulp, Officers Marks and Seiling, Mayor Hozza, and the Whitehall Township Board of Commissioners filed a motion to dismiss on August 10, 2016. Doc. No. 9.

Seemingly in response to the motions to dismiss, Fitzgerald filed an amended complaint on August 31, 2016, in which he again asserted claims under 42 U.S.C. §§ 1981, 1983, and 1985(3), as well as under Pennsylvania common law, against the aforementioned defendants. Doc. No. 17. Although Fitzgerald filed opposition to the motions to dismiss the original complaint on September 6, 2016 and September 7, 2016, the court subsequently denied those motions as moot on September 23, 2016, because Fitzgerald had filed an amended complaint. Doc. Nos. 18, 19, 24.

District Attorney Martin, A.D.A. Luksa, Detectives Cruz and Frey, and the Lehigh County D.A.'s Office filed a motion to dismiss the amended complaint on September 12, 2016. Doc. No. 20. Lehigh County, the Lehigh County Department of Corrections, Sweeney, and Muller filed a motion to dismiss the amended complaint on September 14, 2016. Doc. No. 21. Whitehall Township, the Whitehall Township Police Department, Chief Kulp, Officers Marks and Seiling, Mayor Hozza, and the Whitehall Township Board of Commissioners filed a motion to dismiss the amended complaint on September 19, 2016. Doc. No. 22. Fitzgerald filed opposition to each of the motions to dismiss the amended complaint on September 28, 2016, October 3, 2016, and October 11, 2016. Doc. Nos. 27, 28, 29. The court heard oral argument on the motions to dismiss the amended complaint on November 29, 2016, and granted the motions, dismissing the amended complaint without prejudice to Fitzgerald to file a second amended complaint. Doc. Nos. 32, 33.

Fitzgerald timely filed a second amended complaint ("SAC") on December 20, 2016, this time bringing nine claims under 42 U.S.C. § 1983 ("section 1983") and Pennsylvania common

law, against District Attorney Martin, A.D.A. Luksa, Detectives Cruz and Frey, the Whitehall Township Police Department, Chief Kulp, Officers Marks and Seiling, Whitehall Township, and Lehigh County on December 20, 2016.[1]  SAC at ¶¶ 4-22.  Fitzgerald brings all claims against the individual defendants in both their individual and official capacities.  *Id.*

With regard to the allegations against District Attorney Martin, Fitzgerald alleges that District Attorney Martin directed (1) Chief Kulp and Officers Marks and Seiling to arrest him, and (2) Lehigh County to prosecute him.  *Id.* at ¶¶ 58, 63.  Fitzgerald also alleges that District Attorney Martin proceeded with the prosecution against him vindictively and with malice as retribution against his father, who at the time of the incident was the Allentown Chief of Police, because District Attorney Martin actively lobbied and advocated for former Whitehall Police Chief, Ted Kohuth, to become the Allentown Chief of Police.  *Id.* at ¶ 71.

Fitzgerald alleges that the Lehigh County D.A.'s Office and Whitehall Township Police Department have a history and custom of targeting minorities for false arrests and unjust prosecutions, and that Detectives Cruz and Frey targeted him because he is African American. *Id.* at ¶¶ 65, 69.  Fitzgerald also alleges that because he is African American, Chief Kulp and Officers Marks and Seiling effectuated and/or acquiesced to his arrest, and the Lehigh County D.A.'s Office, including District Attorney Martin and A.D.A. Luksa, proceeded with charges against him despite the weight of the evidence exonerating him.  *Id.* at ¶¶ 60, 68.  Moreover, Fitzgerald alleges that Detectives Cruz and Frey began their pursuit of his vehicle without any precipitating cause of suspicion, and conspired to cover up their actions and conceal the events leading up to his detainment and arrest.  *Id.* at ¶¶ 55, 66.

---

[1] As indicated by the court's reference to the defendants named in the SAC, Fitzgerald no longer asserts claims against  Chief Detective Stauffer, Mayor Hozza, Muller, Sweeney, the Lehigh County Department of Corrections, and the Whitehall Township Board of Commissioners.

Fitzgerald alleges that Whitehall Township, Chief Kulp, Lehigh County, and District Attorney Martin failed to adopt, monitor, and enforce appropriate policies and procedures that would have prevented the constitutional violations he suffered. *Id*. at ¶¶ 72-75. Furthermore, Fitzgerald alleges that the Lehigh County D.A.'s Office and Whitehall Township Police Department failed to properly train their subordinate employees. *Id*. at ¶ 25. Moreover, Fitzgerald alleges that Lehigh County and the Whitehall Township Police Department either: (1) followed a policy or custom to deprive African Americans of equal protection under the law; (2) followed a policy, custom, or practice that enabled law enforcement officers – without fear of discipline or consequence – to deprive African Americans of their equal protection rights; or (3) failed to establish or enforce any policies that would have prevented their employees from depriving citizens of equal protection under the law. *Id*. at ¶¶ 61, 67, 70.

With regard to the particular causes of action identified in the SAC, those causes of action are as follows:

1. Count I: Malicious prosecution in violation of Fitzgerald's rights under the Fourth and Fourteenth Amendments of the United States Constitution, brought pursuant to section 1983, against District Attorney Martin, Lehigh County, A.D.A. Luksa, and Detectives Cruz and Frey. *Id*. at ¶¶ 79-90.

2. Count II: False Arrest and/or False Imprisonment in violation of Fitzgerald's rights under the Fourth Amendment, brought pursuant to section 1983, against District Attorney Martin, Detectives Cruz and Frey, Lehigh County, Chief Kulp, Officers Marks and Seiling, and Whitehall Township. *Id*. at ¶¶ 91-102.

3. Count III: Deliberately indifferent and/or illegal policies, practices, customs, training, and supervision in violation of Fitzgerald's rights under the Fourth and Fourteenth

Amendments, brought pursuant to section 1983, against Whitehall Township and the Whitehall Township Police Department. *Id*. at ¶¶ 103-112.

4. <u>Count IV</u>: Deliberately indifferent and/or illegal policies, practices, customs, training, and supervision in violation of Fitzgerald's rights under the Fourth Amendment, brought pursuant to section 1983, against Lehigh County. *Id*. at ¶¶ 113-123.

5. <u>Count V</u>: Malicious Prosecution in violation of Fitzgerald's rights to equal protection under the laws and under the Fourth and Fifth Amendments, brought pursuant to section 1983, against District Attorney Martin, Detectives Cruz and Frey, A.D.A. Luksa, and Lehigh County. *Id*. at ¶¶ 124-142.

6. <u>Count VI</u>: False Arrest and/or False Imprisonment in violation of Fitzgerald's rights under the Fourth and Fifth Amendments, brought pursuant to section 1983, against District Attorney Martin, Detectives Cruz and Frey, Lehigh County, Chief Kulp, Officers Marks and Seiling, and Whitehall Township. *Id*. at ¶¶ 143-158.

7. <u>Count VII</u>: Malicious Prosecution under Pennsylvania law against Lehigh County, District Attorney Martin, A.D.A. Luksa, and Detectives Cruz and Frey. *Id*. at ¶¶ 159-172.

8. <u>Count VIII</u>: False Imprisonment under Pennsylvania law against District Attorney Martin, Detectives Cruz and Frey, Lehigh County, Chief Kulp, Officers Marks and Seiling, and Whitehall Township. *Id*. at ¶¶ 173-184.

9. <u>Count IX</u>: False Arrest under Pennsylvania law against District Attorney Martin, Detectives Cruz and Frey, Lehigh County, Chief Kulp, Officers Marks and Seiling, and Whitehall Township. *Id*. at ¶¶ 185-196.

District Attorney Martin, A.D.A. Luksa, and Detectives Cruz and Frey (collectively, the "Lehigh County D.A.'s Office Defendants") filed a motion to dismiss the SAC on January 4,

2017. Doc. No. 35. Lehigh County also separately filed a motion to dismiss the SAC that same day. Doc. No. 36. Whitehall Township, the Whitehall Township Police Department, Chief Kulp, and Officers Marks and Seiling (collectively, the "Whitehall Township Defendants") filed a motion to dismiss the SAC on January 5, 2017. Doc. No. 37. Fitzgerald filed opposition to the outstanding motions to dismiss on January 18, 2017. Doc. Nos. 39, 40, 41. The court heard oral argument on the motions on May 26, 2017, during which Fitzgerald agreed to dismiss without prejudice all claims against the Whitehall Township Defendants. Doc. No. 46. Accordingly, the court entered an order on May 30, 2017, which (1) dismissed without prejudice the claims against the Whitehall Township Defendants and (2) denied the Whitehall Township Defendants' motion to dismiss as moot. Doc. No. 47. The outstanding motions filed by the Lehigh County D.A.'s Office Defendants and Lehigh County are ripe for disposition.

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require

the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Third Circuit employs a three-step approach to evaluate whether a complaint satisfies the *Twombly*/*Iqbal* standard:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal footnote omitted).

## B.     Analysis

"Section 1983 provides private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. County of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (citing 42 U.S.C. § 1983). "[A] plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Benn v. Universal Health Sys.*,

371 F.3d 165, 169–70 (3d Cir. 2004)). "Accordingly, there can be no cause of action under §

1983 absent violation of a right secured by the Constitution or the laws of the United States."

*Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 244 (3d Cir. 2005).

When evaluating section 1983 claims,

"[t]he first step . . . is to identify the exact contours of the underlying right said to
have been violated and to determine whether the plaintiff has alleged a
deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806
(3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118
S.Ct. 1708, 1714 n.5, 140 L.Ed.2d 1043 (1998)). Next, a plaintiff must
demonstrate a defendant's "personal involvement in the alleged wrongs." *Rode v.
Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff makes sufficient
allegations of a defendant's personal involvement by describing the defendant's
participation in or actual knowledge of and acquiescence in the wrongful conduct.
*Id.* Although a court can infer that a defendant had contemporaneous knowledge
of wrongful conduct from the circumstances surrounding a case, the knowledge
must be actual, not constructive. *Baker v. Monroe Twp.,* 50 F.3d 1186, 1194 (3d
Cir. 1995); *Rode,* 845 F.2d at 1201 n.6. A plaintiff "must portray specific conduct
by state officials which violates some constitutional right." *Gittlemacker v.
Prasse,* 428 F.2d 1, 3 (3d Cir. 1970).

*Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

When an individual defendant is a supervisor, there are two theories of supervisory

liability: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is

shown that such defendants, with deliberate indifference to the consequences, established and

maintained a policy, practice or custom which directly caused [the] constitutional harm[,]" and

(2) "a supervisor may be personally liable under § 1983 if he or she participated in violating the

plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of

and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile

Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *see also Santiago,* 629 F.3d at 129

n.5 (acknowledging the same theories of supervisory liability).

A plaintiff bringing a section 1983 claim against a municipality must establish that the

constitutional injury inflicted upon him was "permitted under [the municipality's] adopted policy

or custom." *Mulholland v. Government Cty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (internal quotation marks and citation omitted). Regarding establishing a policy or custom,

> [p]olicy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law. Custom ... may also be established by evidence of knowledge and acquiescence.

*Id.* (internal quotation marks and citation omitted).

### 1. Claims Against the Lehigh County D.A.'s Office Defendants

Fitzgerald asserts section 1983 claims against the Lehigh County D.A.'s Office Defendants, in their individual and official capacities, for malicious prosecution, false arrest, false imprisonment, and conspiracy. SAC at ¶¶ 79-102, 124-158. He also alleges Pennsylvania common law claims against them for malicious prosecution, false imprisonment, and false arrest. *Id.* at ¶¶ 159-196. The Lehigh County D.A.'s Office Defendants seek dismissal of the section 1983 claims under Rule 12(b)(6) claiming that Fitzgerald has failed to state a claim upon which relief can be granted. *See* Defs.', James B. Martin, Steven Luksa, Christopher Cruz, and Todd Frey, Mem. of Law in Supp. of Defs.' Mot. to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted ("D.A.'s Office MTD") at 1, 3-4, Doc. No. 35.

#### a. Official Capacity Claims

Fitzgerald asserts claims against the Lehigh County D.A.'s Office Defendants in both their individual and official capacities, and these defendants seek dismissal of the official capacity claims because they are not policymakers for Lehigh County. *Id.* at 6-8. The court will consider whether the individual defendants are policymakers for Lehigh County below in the context of analyzing Lehigh County's motion to dismiss. However, the court need not rely on this argument to determine whether to properly dismiss the official capacity claims because

claims against government officials in their official capacities are analyzed as municipal liability claims against the municipality that employs them. *A.M. ex rel. J.M.K.*, 372 F.3d at 580 (noting that "[a] suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself" (citation omitted)). Therefore, "[a]n official-capacity suit is merely another way of pleading an action against an entity of which an officer is an agent." *Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting that an "[official capacity] suit is properly treated as a suit against the entity"); *see also Whaumbush v. City of Philadelphia*, 747 F. Supp. 2d 505, 510 n.2 (E.D. Pa. 2010) (dismissing the claims against the individual defendants in their official capacities "as they are duplicative of Plaintiffs' claims against the City" (citing *Strickland*, 647 F. Supp. 2d at 428 (M.D. Pa. 2009)). Accordingly, the court will dismiss the claims against the individual Lehigh County D.A.'s Office Defendants in their official capacities as duplicative of the claims against Lehigh County.

### b. Claims for Punitive Damages

Fitzgerald seeks punitive damages against the Lehigh County D.A.'s Office Defendants. SAC at ¶¶ 90, 102, 142, 158, 172, 184, 196. The Lehigh County D.A.'s Office Defendants seek dismissal of the punitive damages claims insofar as they are asserted against them in their official capacities. D.A.'s Office MTD at 8-9. "Punitive damages in [section] 1983 cases are available where the defendants have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others." *Keenan v. City of Philadelphia*, 983 F.2d 459, 469-70 (3d Cir. 1992) (internal quotation marks and citations omitted). "[S]uch damages are unavailable under sections 1983, 1985, and 1986 against a municipality or against local officials in their official capacity." *Agresta v. Goode*, 797 F. Supp. 399, 410 (E.D. Pa. 1992) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)); *see also Strickland*, 647 F. Supp. 2d

at 428. However, punitive damages are available in section 1983 actions against officials in their individual capacities. *Agresta*, 797 F. Supp. at 410 (citing *Smith v. Wade*, 461 U.S. 30, 35, 50 (1983)). Here, the court need not consider whether punitive damages are available against the Lehigh County D.A.'s Office Defendants in their official capacities, because the court is dismissing all official capacity claims against these defendants as duplicative of the claims against Lehigh County.[2]

        c.        <u>Section 1983 Claim for Malicious Prosecution</u>

Through Count I of the SAC, Fitzgerald brings a section 1983 malicious prosecution claim against the Lehigh County D.A.'s Office Defendants under the Fourth and Fourteenth Amendments. SAC at ¶¶ 79-90. The Lehigh County D.A.'s Office Defendants argue that the court should dismiss this count because Fitzgerald has failed to set forth a valid malicious prosecution claim. D.A.'s Office MTD at 9.

As a preliminary matter, "[a] constitutional claim for malicious prosecution stems from the Fourth Amendment[.]" *Fields v. City of Philadelphia*, 166 F. Supp. 3d 528, 540 (E.D. Pa. 2016) (citation omitted). Additionally, "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Therefore, the court will dismiss the malicious prosecution claim to the extent that Fitzgerald brings it under the Due Process Clause of the Fourteenth Amendment, but the court still must consider the merits of the claim under the Fourth Amendment.

---

[2] Even if the court was not dismissing the official capacity claims against the Lehigh County D.A.'s Office Defendants as duplicative of the claims against Lehigh County, the court would still dismiss the punitive damages claims against these defendants in their official capacities. *See Agresta*, 797 F. Supp. at 410. Additionally, while Lehigh County does not appear to have moved for dismissal of the punitive damages claims asserted against it, punitive damages are also not available against it because it is a municipality. *Id.*

To bring a section 1983 claim for malicious prosecution under the Fourth Amendment, a plaintiff must allege that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citation omitted).

Detectives Cruz and Frey contend that Fitzgerald fails to adequately plead the first, third, and fifth elements of a section 1983 malicious prosecution claim, and that even if he had adequately pleaded the elements, they are nonetheless entitled to qualified immunity. D.A.'s Office MTD at 10-12, 14-15. With respect to the first element, Detectives Cruz and Frey contend Fitzgerald fails to allege that they instituted criminal proceedings against him, and that as law enforcement officers, they were not responsible for the formal commencement of criminal proceedings against him. *Id.* at 11. As to whether police officers can initiate criminal proceedings as a matter of law, while "prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (internal quotation marks and citations omitted). Here, Fitzgerald alleges that Detectives Cruz and Frey "provided false statements to authorities to conceal the illegal events leading to their impermissible detainment and arrest of [] Fitzgerald." SAC at ¶ 66. Therefore, for the purposes of a malicious prosecution claim, they may be considered to have initiated criminal proceedings against Fitzgerald, and he has satisfied the first element of a malicious prosecution claim.

With respect to the third element, Detectives Cruz and Frey contend that Fitzgerald fails to adequately plead that they lacked probable cause to initiate proceedings against him. D.A.'s Office MTD at 14-15. "Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested." *United States v. Laville*, 480 F.3d 187, 195 (3d Cir. 2007) (citations omitted). Additionally, "[t]he validity of an arrest is determined by the law of the state where the arrest occurred." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citation omitted). In determining whether probable cause exists, courts must consider "the totality of the circumstances within an officer's knowledge." *Laville*, 480 F.3d at 189. When evaluating the circumstances within an officer's knowledge and on-the-scene judgments,

> we must, of course, remember that police officers may well "draw inferences and make deductions . . . that might well elude an untrained person." Nevertheless, an officer's inferences and deductions can only justify a warrantless arrest if the government satisfies its burden of establishing the probable cause necessary to support the arrest. Notwithstanding the deference afforded the on-the-scene conclusion of police officers, probable cause must ultimately be decided by the courts, not the police.

*Myers*, 308 F.3d at 255 (citations omitted).

Here, Detectives Cruz and Frey argue that the allegations in the SAC demonstrate that they had probable cause to believe that Fitzgerald had committed the offense of simple assault under 18 Pa. C.S. § 2701(a)(3). D.A.'s Office MTD at 15 (citing SAC at ¶¶ 41, 44, 48). This statute provides, in relevant part, that a person is guilty of simple assault if he, *inter alia*, "attempts by physical menace to put another in fear of imminent serious bodily injury[.]" 18 Pa. C.S. § 2701(a)(3). In the SAC, Fitzgerald alleges that (1) Detectives Cruz and Frey were driving an unmarked vehicle and wearing plain clothes, (2) they did not identify themselves as law enforcement officers, and (3) after aggressively following him, Detective Frey exited his vehicle

and approached Fitzgerald's car after he pulled over and rolled down his window.  SAC at ¶¶ 38-42, 44-46.  Additionally, Fitzgerald alleges that when Detective Frey approached his car, Fitzgerald remained inside his vehicle, and "drew his firearm and held it pointed downward at chest level[.]"  *Id.* at ¶ 48.

In support of their contention that Fitzgerald's acts established probable cause that he had committed the offense of simple assault, Detectives Cruz and Frey reference *United States v. Myers*, in which the Third Circuit noted that "common sense suggests that one can menace someone within the meaning of subsection (3) [of Pennsylvania's simple assault statute] by waving a gun during an argument."  308 F.3d at 257 (citation omitted).  However, that case is factually distinguishable from the allegations presently before the court, as Fitzgerald does not allege that an argument occurred or that he waved his gun.  Furthermore, Detectives Cruz and Frey cite no authority indicating that the act of holding a gun pointed downward, with no accompanying aggressive behavior, violates Pennsylvania's simple assault statute.  *Cf. Commonwealth v. Veni*, No. 2641 EDA 2013, 2014 WL 10795074, at *3 (Pa. Super. Nov. 12, 2014) (noting that "[t]he act of pointing a gun *at another person* [can] constitute simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury") (emphasis added) (citing *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. 2003)). Therefore, based on the factual allegations in the SAC, the court cannot conclude that Fitzgerald attempted by physical menace to put Detectives Cruz and Frey in fear of imminent serious bodily injury.  Consequently, the court cannot conclude that the allegations in the SAC conclusively establish that they had probable cause to arrest him, and the third element for malicious prosecution is satisfied.

With respect to the fifth element, Detectives Cruz and Frey contend that Fitzgerald has failed to allege that he suffered a seizure as a consequence of a legal proceeding.  D.A.'s Office

MTD at 10. For the purposes of establishing this element of a malicious prosecution claim, "[t]he alleged seizure must occur as a result of the malicious prosecution, and thus, it must occur chronologically after the pressing of charges." *Basile v. Township of Smith*, 752 F. Supp. 2d 643, 659 (W.D. Pa. 2010) (citation omitted). As to what constitutes a seizure, "[t]he court of appeals has narrowed the applicable definition of seizure to when a criminal defendant is subject to either pretrial custody or 'some onerous types of pretrial, non-custodial restrictions' such as those on travel out of the jurisdiction." *Id.* (citing *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005); *Gallo v. City of Philadelphia*, 161 F.3d 217, 224 (3d Cir. 1998)).

In the SAC, Fitzgerald alleges that "[f]ollowing [his] arrest, Lehigh County – at the direction of Martin – prosecuted [him][.]" SAC at ¶¶ 54, 63. However, the allegations do not suggest that Fitzgerald was ever in physical custody after charges were brought against him, or that he experienced any non-custodial restrictions, onerous or otherwise. *See id.* at ¶¶ 127, 162. Therefore, Fitzgerald has failed to allege that he suffered a seizure subsequent to the pressing of charges against him and, as such, he has not plausibly pleaded the fifth element of the malicious prosecution claim.

Because Fitzgerald fails to adequately plead a claim for malicious prosecution against Detectives Cruz and Frey, the court must dismiss the claim, and the court need not consider whether they are entitled to qualified immunity. *See Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 567 (E.D. Pa. 2005) (noting that that the first step in assessing a qualified immunity defense is determining "whether the plaintiff has alleged the deprivation of an actual constitutional right at all") (citing *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000)).

As to District Attorney Martin and A.D.A. Luksa, they contend that the court must dismiss the section 1983 malicious prosecution claim asserted against them because it is barred by absolute prosecutorial immunity. D.A.'s Office MTD at 12. The doctrine of absolute

immunity protects state prosecutors "from liability under § 1983 for actions performed in a quasi-judicial role." *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). Under this doctrine, a prosecutor acting within the scope of his duties in initiating and pursuing a criminal prosecution is absolutely immune from civil suit for damages under section 1983 for alleged deprivations of the accused's constitutional rights. *Imbler*, 424 U.S. at 427 ("We conclude that the considerations outlined above dictate the same absolute immunity under § 1983 that the prosecutor enjoys at common law."). This "immunity attaches to actions 'intimately associated with the judicial phases of litigation,' but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008) (citations omitted). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citations omitted).

Additionally, "a person is not immune from suit for every wrong he commits just because he happens to be employed as a prosecutor: the inquiry focuses on the nature of the function performed, not the identity of the actor who performed it." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011) (internal quotation marks and citation omitted). Courts take a two-step approach to determining whether a prosecutor's acts are protected by absolute immunity. *Id*. First, "[t]he court must ascertain just what conduct forms the basis for the plaintiff's cause of action[.]" *Id*. (citation omitted). "Th[is] first stage focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions." *Id*. (citation omitted). Second, the court must "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id*. (citation omitted).

Here, Fitzgerald alleges that (1) District Attorney Martin directed Lehigh County to prosecute him when no reasonable prosecutor could have had a good faith basis to do so; (2) District Attorney Martin and A.D.A. Luksa proceeded with charges against him "despite the weight of the evidence exonerating him, because he was an African American[;]" and (3) District Attorney Martin proceeded with charges against him as retribution against his father for being hired as Allentown Chief of Police. SAC at ¶¶ 63, 68, 71. Crucially, in each of these allegations, Fitzgerald claims that District Attorney Martin and A.D.A. Luksa are either bringing charges against him, or directing others to do so. A prosecutor's act of bringing charges against a person is part of his prosecutorial function, and therefore protected by absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 128 (1997) (citation omitted) (noting that "we shield the prosecutor seeking an indictment because any lesser immunity could impair the performance of a central actor in the judicial process."). Therefore, District Attorney Martin and A.D.A. Luksa are entitled to absolute immunity as prosecutors from the section 1983 malicious prosecution claim and the court will dismiss that claim against them.

> d.      Section 1983 Claims for False Arrest and False Imprisonment

In Count II of the SAC, Fitzgerald brings section 1983 Fourth Amendment claims for false arrest and false imprisonment against District Attorney Martin and Detectives Cruz and Frey. SAC at ¶¶ 91-100. District Attorney Martin and Detectives Cruz and Frey seek dismissal of these claims for Fitzgerald's failure to state a claim upon which relief can be granted. D.A.'s Office MTD at 15.

As a preliminary matter, the court will analyze the false arrest and false imprisonment claims together:

> False arrest and false imprisonment are "nearly identical claims," and courts often analyze the claims together. *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005). False arrest is "grounded in the Fourth Amendment's

> guarantee against unreasonable seizures," *Groman v. Twp. of Manalapan*, 47 F.3d
> 628, 636 (3d Cir. 1995), where false imprisonment is based upon the Fourth
> Amendment's prohibition against deprivation of liberty without due process of
> law, *Baker v. McCollan*, 443 U.S. 137, 145 (1979). "Claims of both false arrest
> and false imprisonment are predicated on an arrest made without probable cause
> in violation of the Fourth Amendment." *Quinn v. Cintron*, No. 11–2471, 2013
> WL 5508667, at *3, 2013 U.S. Dist. LEXIS 143682, at *9 (E.D. Pa. Oct. 3, 2013)
> (citing *Baker*, 443 U.S. at 145, 99 S.Ct. 2689, *Groman*, 47 F.3d at 636).

*Wilson v. Dewees*, 977 F. Supp. 2d 449, 455 (E.D. Pa. 2013). To bring a section 1983 claim for

either false arrest or false imprisonment under the Fourth Amendment, a plaintiff must show:

"(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v.*

*City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted); *see also Wilson*, 977

F. Supp. 2d at 455-56 (E.D. Pa. 2013) (setting forth elements for claims).

Detectives Cruz and Frey contend that the false arrest and false imprisonment claims fail

because (1) they had probable cause to arrest Fitzgerald, and (2) even if they lacked probable

cause to arrest, they are entitled to qualified immunity. D.A.'s Office MTD at 17-18. As to

Detectives Cruz and Frey's contention that they had probable cause to arrest Fitzgerald, they

assert the same arguments that they did previously with respect to Fitzgerald's malicious

prosecution claim. *Id*. at 17-18. The court's analysis of them is also the same. And again, the

court is limited to considering the allegations in the complaint, and must assume the veracity of

these allegations. Therefore, as with the malicious prosecution claim, the court cannot conclude

that Detectives Cruz and Frey had probable cause to arrest Fitzgerald and, as such, Fitzgerald has

adequately pleaded the elements of false arrest and false imprisonment claims. Nonetheless, the

court must still consider whether Detectives Cruz and Frey are entitled to qualified immunity

with respect to the claims.

"The doctrine of qualified immunity provides that law enforcement officers acting within

their professional capacity are generally immune from trial insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brockington*, 354 F. Supp. 2d at 567 (internal quotation marks omitted) (citing *Wilson*, 212 F.3d at 786 (3d Cir. 2000)).  Assessing a qualified immunity defense requires a two-step analysis:

> First, a court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson*, 212 F.3d at 786 (citation omitted). Second, if plaintiff has alleged such a deprivation, a court should "proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  A constitutional right is established if it is sufficiently clear and well-defined so that "a reasonable official would understand that what he is doing violates that right." *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004) (citations omitted).  Even if a reasonable official would so understand, the defendant may still be shielded from liability if he made a reasonable mistake as to what the law requires. *Id.* Although it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early "is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right." *Curley*[, 298 F.3d at 277-78].  A decision as to qualified immunity is "premature when there are unresolved disputes of historical facts relevant to the immunity analysis." *Id.* at 278.

*Brockington*, 354 F. Supp. 2d at 567-68.  Here, the court has already determined that Fitzgerald has adequately alleged the deprivation of an actual constitutional right insofar as he has sufficiently alleged that Detectives Cruz and Frey arrested him without probable cause.  Thus, the allegations satisfy the first part of the qualified immunity analysis.

As to the second step, the court must determine whether it would have been clear to a reasonable official that arresting Fitzgerald under the circumstances alleged in the SAC would violate his rights under the Fourth Amendment.  Here, the circumstances alleged in the SAC are that (1) Detectives Cruz and Frey were driving an unmarked vehicle and wearing plain clothes, (2) did not identify themselves as law enforcement officers, and (3) after aggressively following

Fitzgerald, Detective Frey exited his vehicle and approached Fitzgerald's car after he pulled over and rolled down his window. SAC at ¶¶ 38-42, 44-46. Additionally, Fitzgerald alleges that when Detective Frey approached his car, he remained inside his vehicle, and "drew his firearm and held it pointed downward at chest level*[.]" Id*. at ¶ 48.

While the court recognizes the importance of addressing issues of qualified immunity with respect to Detectives Cruz and Frey as early as possible in this litigation, here, there are disputed facts that must be resolved before the court can determine whether the claims against Detectives Cruz and Frey are barred by qualified immunity. Detectives Cruz and Frey contend that "the arrest of [Fitzgerald] was, in the light of the facts as they confronted them, reasonable under all of the circumstances, i.e. that Plaintiff was pointing a gun within his vehicle." D.A.'s Office MTD at 18. However, Fitzgerald does not allege that he pointed his gun at Detectives Cruz and Frey, or that he acted aggressively toward them. Furthermore, Detectives Cruz and Frey cite no authority indicating that a person can be arrested solely on the basis of sitting in a car and holding a gun at chest-level pointed downward, and the court likewise has found none. Therefore, to the extent that Detectives Cruz and Frey move to dismiss the section 1983 claims for false arrest and false imprisonment as barred by the doctrine of qualified immunity, the court must deny the motion at this stage of the litigation.

District Attorney Martin contends that the section 1983 claims for false arrest and false imprisonment against him must fail because: (1) he was not the arresting officer; (2) law enforcement had probable cause to arrest Fitzgerald; and (3) absolute immunity bars the claims. D.A.'s Office MTD at 16-17.

With respect to District Attorney Martin's first argument for dismissal, the court notes that Fitzgerald's false arrest and false imprisonment claims against District Attorney Martin are based on a theory of supervisory liability. *See* SAC at ¶ 58 (alleging that "Martin directed

Marks, Seilig [sic] and Kulp to arrest Plaintiff"). Under a theory of supervisory liability, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). However, supervisors cannot be liable under section 1983 for the unconstitutional acts of their subordinates based only on a theory of respondeat superior. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). Here, to state a claim for supervisory liability against District Attorney Martin, Fitzgerald "must plead that [District Attorney Martin] directed others to violate [his] rights." *Id.* at 130 (internal quotation marks and citation omitted). Additionally, Fitzgerald "must allege a causal connection between the supervisor's direction and that violation, or, in other words, proximate causation." *Id.* "Proximate causation is established where the supervisor gave directions that the supervisor knew or should reasonably have known would cause others to deprive the plaintiff of [his] constitutional rights." *Id.* (internal quotation marks and citations omitted). Therefore, to state a false arrest claim against District Attorney Martin based on supervisory liability, Fitzgerald must plead facts plausibly demonstrating that District Attorney Martin directed others to arrest Fitzgerald "in a manner that [he] knew or should reasonably have known would cause [the arresting officers] to deprive [Fitzgerald] of [his] constitutional rights." *Id.* (internal quotation marks and citations omitted).

Here, the SAC contains only one allegation connecting District Attorney Martin to Fitzgerald's alleged false arrest and false imprisonment—that "Martin directed Marks, Seilig [sic] and Kulp to arrest Plaintiff." SAC at ¶ 58. This allegation of supervisory liability is conclusory, as it merely recites one of the required elements of a supervisory liability claim— that District Attorney Martin directed officers in the violation of Fitzgerald's rights. *Santiago*,

629 F.3d at 131 (finding that an allegation of supervisory liability, "that [the defendants] told Alpha team to do what they did" was "a formulaic recitation of the elements of a supervisory liability claim—namely that [the defendants] directed others in the violation of [the plaintiff's] rights" (internal quotation marks and citation omitted)).  Because the allegation that District Attorney Martin directed Fitzgerald's arrest is conclusory, it is "not entitled to the assumption of truth," *id*. (citing *Iqbal*, 556 U.S. at 678), and Fitzgerald has failed to plead a claim for supervisory liability.  However, even if this allegation was entitled to the assumption of truth, Fitzgerald still failed to plead a claim for supervisory liability against District Attorney Martin, because he fails to allege that District Attorney Martin's alleged direction of Fitzgerald's arrest was done "in a manner that [he] knew or should reasonably have known would cause [Detectives Cruz and Frey] to deprive [Fitzgerald] of [his] constitutional rights."  *Id*. at 130 (internal quotation marks and citations omitted).  Therefore, the court will dismiss the false arrest and false imprisonment claims against District Attorney Martin.  Because the court will dismiss the false arrest and false imprisonment claims against District Attorney Martin for failing to adequately plead the elements of supervisory liability, the court need not consider District Attorney Martin's remaining arguments for dismissal of these claims.

e.      Section 1983 Claims for Civil Rights Conspiracy

Through Counts V and VI of the SAC, Fitzgerald brings section 1983 claims under the Fourth and Fifth Amendments for conspiracy to commit racial discrimination against Detectives Cruz and Frey, A.D.A. Luksa, and District Attorney Martin, alleging that they conspired to falsely arrest, falsely imprison, and maliciously prosecute him based on his race.  SAC at ¶¶ 124-158.  Detectives Cruz and Frey, A.D.A. Luksa, and District Attorney Martin seek dismissal of the claims because: (1) they cannot be brought under the Fourth and Fifth Amendments, and (2) Fitzgerald has not adequately pleaded a conspiracy or racial discrimination.

As for Detectives Cruz and Frey, A.D.A. Luksa, and District Attorney Martin's first argument, "[t]he Due Process Clause of the Fifth Amendment limits the actions of only the Federal Government. . . . It does not limit the actions of state officials[.]" *Thompson v. Wagner*, 631 F. Supp. 2d 664, 671 (W.D. Pa. 2008) (citing *Huffaker v. Bucks Cty. Dist. Attorney's Office*, 758 F. Supp. 287, 290 (E.D. Pa. 1991)). Here, Fitzgerald has not sued any federal defendants. Therefore, to the extent that the Fitzgerald brings conspiracy to commit racial discrimination claims under the Fifth Amendment, the court will dismiss them.

Additionally, racial discrimination claims are properly brought under the Equal Protection Clause of the Fourteenth Amendment, not the Fourth Amendment.

> The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It guarantees fairness and equality in the treatment of individuals by government officials. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 239–42, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Selective enforcement of law or regulations motivated by an individual's race may give rise to a violation of the Fourteenth Amendment. *See Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002).

*Watson v. Witmer*, 183 F. Supp. 3d 607, 613 (M.D. Pa. 2016). Here, counts five and six of the SAC appear to allege racial discrimination claims. Specifically, Fitzgerald alleges: (1) "Plaintiff, as an African American citizen, is a member of a protected class[,]" SAC at ¶ 125; (2) "The criminal proceedings were initiated with malice and were motivated by Plaintiff's racial classification as an African American citizen[,]" *id.* at ¶ 129; (3) "Defendants intentionally, willfully, and maliciously conspired to deprive Plaintiff because of his race (either directly or indirectly) of the equal protection of the laws or of equal privileges and immunities under the laws; and in furtherance of the conspiracy[,]" *id.* at ¶ 130; (4) "Defendants caused the detention of Plaintiff and were motivated by Plaintiff's racial classification as an African American[,]" *id.*

at ¶ 144; (5) "Defendants, Martin, Cruz, Frey, [and] Lehigh County . . . intentionally, willfully, and maliciously conspired to deprive Plaintiff because of his race (either directly or indirectly) of the equal protection of the laws or of equal privileges and immunities under the laws; and in furtherance of the conspiracy[,]" *id.* at ¶ 147; and (6) "Defendants would not have deprived Plaintiff of his rights if he was not African American," *id.* at ¶ 150. Because the claims appear to be racial discrimination claims, the court must dismiss them to the extent Fitzgerald brings them under the Fourth Amendment, and because he fails to properly bring them under the Fourteenth Amendment, the court must dismiss them in their entirety. Nonetheless, even if Fitzgerald had properly brought the civil rights conspiracy claims under the Fourteenth Amendment, the court must still dismiss them because he failed to plead facts to satisfy the elements of conspiracy and racial discrimination.

To state a claim for conspiracy under section 1983, Fitzgerald must establish that "two or more conspirators reach[ed] an agreement to deprive [him] of a constitutional right under color of law." *Berrios v. City of Philadelphia*, 96 F. Supp. 3d 523, 534 (E.D. Pa. 2015) (citing *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). "Such a conspiracy requires a meeting of the minds." *Id.* (citing *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008)). Additionally, "[a] plaintiff must allege a factual basis to support agreement and concerted action-the elements of conspiracy." *Id.* (citation omitted). Moreover,

> "[t]o withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor." *DeJohn v. Temple University*, 2006 WL 2623274, at *5 (E.D. Pa. Sept. 11, 2006) (quoting *Boddorff v. Publicker Indus., Inc.*, 488 F.Supp. 1107, 1112 (E.D. Pa. 1980)). Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy. *Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D. Pa. 1997). "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id.*

*Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 648 (E.D. Pa. 2014). Additionally, a plaintiff "must provide more than mere incantation of the words conspiracy or acted in concert to satisfy [the] Rule 8 pleading requirement." *Tarapchak v. Lackawanna Cty.*, 173 F. Supp. 3d 57, 73 (M.D. Pa. 2016) (internal quotation marks omitted) (citing *Loftus v. SEPTA*, 843 F. Supp. 981, 987 (E.D. Pa. 1994).

Here, the only allegations of a conspiracy between Detectives Cruz and Frey, A.D.A. Luksa, and District Attorney Martin are that: (1) "Defendants Cruz and Frey conspired intentionally to cover up their actions against Mr. Fitzgerald[,]" SAC at ¶ 66; (2) "In order to facilitate the false arrest and malicious prosecution of Mr. Fitzgerald, Defendants conspired to trump up charges against Mr. Fitzgerald and knowingly and intentionally disregarded the weight of the evidence exonerating Mr. Fitzgerald[,]" *id.* at ¶ 76; (3) "Defendants intentionally, willfully, and maliciously conspired to deprive Plaintiff because of his race (either directly or indirectly) of the equal protection of the laws or of equal privileges and immunities under the laws; and in furtherance of the conspiracy[,]" *id.* at ¶¶ 130, 147; and (4) "These defendants began the conspiracy when Cruz and Frey decided to follow Plaintiff aggressively and the conspiracy lasted until Plaintiff was acquitted of all charges," *id.* at ¶¶ 131, 148. None of the aforementioned allegations allege facts supporting an agreement between Detectives Cruz and Frey, A.D.A. Luksa, and District Attorney Martin, or any concerted acts taken by them. Accordingly, Fitzgerald has failed to plead a conspiracy in the SAC.

To state an equal protection claim for racial discrimination under section 1983, Fitzgerald must establish that the actions of government officials "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002) (citations omitted). To establish a discriminatory effect, Fitzgerald must "show that [he] is a member of a protected class and that [he] was treated differently from similarly situated

individuals in an unprotected class." *Id.* at 206 (citations omitted). Here, Fitzgerald alleges—and Detectives Cruz and Frey and District Attorney Martin concede—that he is a member of a protected class. SAC at ¶ 125; D.A.'s Office MTD at 20. However, Detectives Cruz and Frey, A.D.A. Luksa, and District Attorney Martin contend that he fails to adequately plead that he was treated differently from similarly situated individuals in an unprotected class.

With respect to Fitzgerald's treatment by Detectives Cruz and Frey, A.D.A. Luksa, and District Attorney Martin, he includes the following allegations in the SAC: (1) "The criminal proceedings were initiated with malice and were motivated by Plaintiff's racial classification as an African American citizen[,]" SAC at ¶ 129; (2) "Defendants intentionally, willfully, and maliciously conspired to deprive Plaintiff because of his race (either directly or indirectly) of the equal protection of the laws or of equal privileges and immunities under the laws; and in furtherance of the conspiracy[,]" *id.* at ¶ 130; (3) "Defendants caused the detention of Plaintiff and were motivated by Plaintiff's racial classification as an African American[,]" *id.* at ¶ 144; (4) "Defendants, Martin, Cruz, Frey, [and] Lehigh County . . . intentionally, willfully, and maliciously conspired to deprive Plaintiff because of his race (either directly or indirectly) of the equal protection of the laws or of equal privileges and immunities under the laws; and in furtherance of the conspiracy[,]" *id.* at ¶ 147; and (5) "Defendants would not have deprived Plaintiff of his rights if he was not African American," *id.* at ¶ 150. Here, while Fitzgerald alleges the conclusion that Detectives Cruz and Frey, A.D.A. Luksa, and District Attorney Martin treated him the way that they did based on his race, he does not allege any facts that he was treated differently from other similarly situated individuals who were not in a protected class. Therefore, the allegations do not establish that the actions of Detectives Cruz and Frey, A.D.A. Luksa, and District Attorney Martin had a discriminatory effect and, as such, Fitzgerald has failed to plead a claim for racial discrimination under section 1983. Ultimately, because

Fitzgerald has failed to plead conspiracy and racial discrimination claims, and because the civil rights conspiracy claims are not properly brought pursuant to the Fourteenth Amendment, the court must dismiss these claims.

f.      Pennsylvania State Law Claims

Through Counts VII, VIII, and IX of the SAC, Fitzgerald brings claims under Pennsylvania state law against the D.A.'s Office Defendants for malicious prosecution, false arrest, and false imprisonment.  SAC at ¶¶ 159-196.  The D.A.'s Office Defendants seek dismissal of the Pennsylvania state law claims because they contend that retaining jurisdiction over the claims would not serve judicial economy, convenience, or fairness, after the court dismisses the section 1983 claims.  *See* D.A.'s Office MTD at 6.  With respect to supplemental jurisdiction, 28 U.S.C. § 1367 provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  The statute also provides for circumstances when a district court may decline to exercise supplemental jurisdiction over a state law claim, including, *inter alia*, when "the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c).  "The decision to retain or decline jurisdiction over state-law claims is discretionary . . . based on considerations of judicial economy, convenience and fairness to the litigants."  *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (internal quotation marks and citations omitted).  However, "where federal claims are dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 n.1 (3d Cir. 1997) (citation and internal quotation marks

omitted).  Finally, "[i]f a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits."  *Kach*, 589 F.3d at 650 (citing *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999)).

Here, the D.A.'s Office Defendants do not contest that Fitzgerald's Pennsylvania state law claims are so related to his federal claims that they form part the same case or controversy. Additionally, while the court dismisses some of the section 1983 claims that it has original jurisdiction over, it does not dismiss them all.  Therefore, the court will not dismiss the Pennsylvania state law claims.

## 2.     Claims Against Lehigh County

Fitzgerald alleges section 1983 claims against Lehigh County for malicious prosecution, false arrest and false imprisonment, deliberately indifferent and/or illegal policies, practices, customs, training, and supervision, and conspiracy to commit racial discrimination.  SAC at ¶¶ 79-102, 113-158.  Fitzgerald also alleges Pennsylvania common law claims against Lehigh County for malicious prosecution, false imprisonment, and false arrest.  *Id*. at ¶¶ 159-196. Lehigh County seeks dismissal of Fitzgerald's section 1983 claims for failure to state a claim pursuant to Rule 12(b)(6), and seeks dismissal of the state law claims, arguing that after dismissing the section 1983 claims, the court's exercise of supplemental jurisdiction over them would not serve judicial economy, convenience, or fairness.  Brief in Supp. of Def. Lehigh Cty.'s Rule 12(b)(6) Mot. to Dismiss the SAC ("Lehigh Cty. MTD") at 4, 12, Doc. No. 36-1.

Because Lehigh County is a municipality, the framework for establishing liability under section 1983 involves two steps: (1) first, Fitzgerald "must show that [he] [was] deprived of 'rights, privileges, or immunities secured by the Constitution and laws,'" (2) second, he must show "that the deprivation of those rights was the result of an official government policy or

custom." *Mulholland v. Government Cty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013).

"[L]iability simply cannot be predicated upon a showing of respondeat superior." *Reitz v. County of Bucks*, 125 F.3d 139, 146 (3d Cir. 1997). Satisfying the first step requires the same analysis that the court used in evaluating Fitzgerald's claims against the D.A.'s Office Defendants—the court must identify the elements of the constitutional tort alleged, and then determine whether Fitzgerald has alleged sufficient facts to satisfy the *Iqbal/Twombly* standard.

As to the second step, Fitzgerald must allege an unlawful policy or custom, as well as a causal link between the unlawful policy or custom and the constitutional deprivation. With respect to the unlawful policy or custom,

> [p]olicy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.
>
> In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. . . . In order to identify who has policymaking responsibility, a court must determine which official has final, unreviewable discretion to make a decision or take an action. Under § 1983, only the conduct of those officials whose decisions constrain the discretion of subordinates constitutes the acts of the municipality. This does not mean, however, that the responsible decisionmaker must be specifically identified by the plaintiff's evidence. Practices so permanent and well settled as to have the force of law [are] ascribable to municipal decisionmakers.

*Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (internal quotation marks and citations omitted).

Incidents involving constitutional violations can also establish a policy or custom provided that certain conditions are met:

> A single incident violating a constitutional right done by a governmental agency's highest policymaker for the activity in question may suffice to establish an official policy. A single incident by a lower level employee acting under color of law, however, does not suffice to establish either an official policy or a custom.

However, if custom can be established by other means, a single application of the custom suffices to establish that it was done pursuant to official policy and thus to establish the agency's liability.

*Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989) (internal citations omitted).

With respect to the causal link to the constitutional deprivation, "a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Bielevicz*, 915 F.2d at 850 (citations omitted). Furthermore, a plaintiff "need not demonstrate that [his] injuries were the direct result of formal departmental procedures or encouragement in order to satisfy the nexus requirement." *Id.* at 851. Instead, a plaintiff must establish "that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." *Id.* With this framework in mind, the court considers the claims against Lehigh County.

a.  Section 1983 Claim for Malicious Prosecution

Through Count I of the SAC, Fitzgerald brings a section 1983 malicious prosecution claim against Lehigh County under the Fourth and Fourteenth Amendments. SAC at ¶¶ 79-90. Lehigh County seeks dismissal based on the SAC's failure to plead facts that Fitzgerald's alleged malicious prosecution was the result of a county policy or custom. Lehigh Cty. MTD at 5-7. As a preliminary matter, and as the court detailed with respect to the malicious prosecution claim against the D.A.'s Office Defendants, the court will dismiss the malicious prosecution claim against Lehigh County insofar as it is brought pursuant the Fourteenth Amendment, because it must properly be brought under the Fourth Amendment. *See Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) (citation omitted); *Fields v. City of Philadelphia*, 166 F. Supp. 3d 528, 540 (E.D. Pa. 2016) (citation omitted). Nonetheless, the court still must consider the merits of Fitzgerald's claim against Lehigh County under the Fourth Amendment.

The court has already determined that Fitzgerald failed to adequately plead the elements of a section 1983 malicious prosecution claim because he failed to allege that he suffered a seizure as a consequence of a legal proceeding—one of the elements required to state a claim for malicious prosecution. Because Fitzgerald fails to plead the elements for malicious prosecution, he fails to establish that he was deprived of a right, privilege, or immunity secured by the Constitution and laws. *See Mulholland*, 706 F.3d at 238. Without an underlying deprivation of a constitutional right, Lehigh County cannot be liable under section 1983, and the claim fails. Therefore, the court will dismiss the malicious prosecution claim against Lehigh County, and the court need not consider the second step in the municipal liability framework—whether Fitzgerald adequately pleads that his alleged constitutional deprivation was the result of a Lehigh County policy or custom.

<ol type="b" start="2">
<li>Section 1983 Claims for False Arrest and False Imprisonment</li>
</ol>

Through Count II of the SAC, Fitzgerald brings section 1983 claims for false arrest and false imprisonment against Lehigh County under the Fourth Amendment. SAC at ¶¶ 91-102. Lehigh County seeks dismissal based on Fitzgerald's failure to establish that his alleged malicious prosecution was the result of a county policy or custom. Lehigh County MTD at 7-8.

The court detailed the elements required to bring section 1983 false arrest and false imprisonment claims under the Fourth Amendment when the court analyzed Fitzgerald's false arrest and false imprisonment claims against the D.A.'s Office Defendants. In analyzing these claims against the D.A.'s Office Defendants, the court determined that Fitzgerald adequately pleads the elements with respect to Detectives Cruz and Frey, but not with respect to District Attorney Martin and A.D.A. Luksa. Therefore, since Fitzgerald has pleaded that he suffered a constitutional deprivation, the court must next consider whether he has plausibly pleaded facts showing that Detectives Cruz and Frey acted pursuant to a Lehigh County policy or custom

33

when they allegedly falsely arrested and falsely imprisoned him. *See Mulholland*, 706 F.3d at 238.

With respect to whether Cruz and Frey acted pursuant to a Lehigh County policy or custom when they allegedly falsely arrested and falsely imprisoned Fitzgerald, he alleges: (1) "the Lehigh County District Attorney's Office . . . [has] a history and custom of targeting minorities for false arrest and unjust prosecutions[,]" SAC at ¶ 69; (2) "[Detectives] Cruz and Frey regularly conducted themselves in the manner described herein[,]" *id.* at ¶ 98; (3) "Lehigh County knew, or should have known, of the behavior of Defendants Cruz and Frey; and the County failed to take all necessary and proper corrective measures to ensure they did not violate individuals' well-established constitutional rights[;]" *id.* at ¶ 99; and (4) "[District Attorney] Martin, as Lehigh County District Attorney, the chief policy maker for the Lehigh County District Attorney's office, failed to adopt, monitor and/or enforce appropriate policies and procedures that would have prevented the constitutional violations suffered by Plaintiff and other citizens," *id.* at ¶ 75. He also alleges that his seizure and detention

> by employees of Lehigh County and Whitehall Township, demonstrates that both Lehigh County and Whitehall Township either:
> a. followed a policy, custom or practice to deprive citizens of their constitutional freedoms, especially African Americans of the equal protection of the law; or
> b. followed a policy, custom or practice that enabled subordinate employees – without fear of discipline or consequence – to deprive citizens of their constitutional freedoms, especially African Americans of their equal protection rights; or
> c. failed to establish or enforce any policies that would have prevented the Defendants from depriving citizens of the equal protection of the law.

*Id.* at ¶ 96. However, the SAC contains no factual allegations to support that Lehigh County has a policy or custom of targeting minorities. The SAC also contains no factual allegations supporting that Lehigh County has a policy of acquiescence toward Detectives Cruz and Frey targeting minorities for false arrest. Moreover, to the extent that the Fitzgerald seeks to impose

liability on Lehigh County by establishing a policy or custom based on the single incident of Detectives Cruz and Frey arresting him, he cannot do so, because Detectives Cruz and Frey are not policymakers for Lehigh County. *See Fletcher*, 867 F.2d at 793. Accordingly, because Fitzgerald fails to plausibly plead that Cruz and Frey acted pursuant to a Lehigh County policy or custom when they allegedly falsely arrested and falsely imprisoned Fitzgerald, the court will dismiss the claim against Lehigh County.

c.      Section 1983 Claim for Failure to Train and Supervise

Through Count IV of the SAC, Fitzgerald brings a section 1983 claim under the Fourth and Fourteenth Amendments against Lehigh County for failure to train and supervise Detectives Cruz and Frey—alleging that Lehigh County's failure to adequately train and supervise them caused his false arrest, false imprisonment, malicious prosecution, and denial of equal protection under the laws.[3] SAC at ¶¶ 113-123. Lehigh County seeks dismissal of the failure to train and supervise claim, arguing that the SAC lacks factual allegations that the county was on notice of the need for a new training program. Lehigh County MTD at 8-10.

As with other section 1983 municipal liability claims, to bring a section 1983 claim against a municipality for failure to train and supervise its employees, a plaintiff must show that: (1) "'[he] [was] deprived of rights, privileges, or immunities secured by the Constitution and laws,'" and (2) "that the deprivation of those rights was the result of an official government policy or custom." *Mulholland*, 706 F.3d at 238. However, because "the policy concerns a failure to train or supervise municipal employees, liability under section 1983 [also] requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom

---

[3] The court notes that some of the allegations pertinent to this claim indicate that Lehigh County failed to train and supervise all "Defendants," while others indicate that Lehigh County failed to train and supervise Detectives Cruz and Frey. Nonetheless, taking into consideration the totality of all the allegations pertinent to the failure to train and supervise claims, the claims appear to be based on the alleged constitutional deprivations caused by only Detectives Cruz and Frey.

those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (internal quotation marks and citation omitted).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks and citation omitted). Additionally,

> [a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.

*Id.* (internal quotation marks and citation omitted). However, in certain narrow circumstances, even in the absence of a pattern of similar violations, a "failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (citation omitted); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989) (hypothesizing that a city that arms its police officers and deploys them into the public to capture fleeing felons without training them on the use of deadly force could reflect deliberate indifference to the consequence based on the predictability that an officer lacking specific tools to handle that situation would violate citizen's rights). Under these narrow circumstances, a plaintiff may establish deliberate indifference based on a single incident. *See Thomas*, 749 F.3d at 223-27 (vacating the district court's grant of summary judgment in a suit based on single-incident liability filed by an inmate who was attacked by other inmates, and noting that there were genuine issues of material fact as to whether the county exhibited deliberate indifference to the need for pre-service training in conflict de-escalation and intervention); *see also Berg*, 219 F.3d at 277 (reversing a district court's grant of summary judgment in a suit based on single-

incident liability filed by a plaintiff who was wrongly arrested pursuant to a warrant that was erroneously issued when a clerk transposed two numbers because "[h]aving employed a design where the slip of a finger could result in wrongful arrest and imprisonment, there remain[ed] an issue of fact whether the County was deliberately indifferent to an obvious risk.").

In addition to deliberate indifference, "[t]he failure to train must have a causal nexus with [the plaintiff's] injury." *Thomas*, 749 F.3d at 226 (citation and internal quotation marks omitted). "Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." *Id*. (citation and internal quotation marks omitted). "Rather, the causation inquiry focuses on whether the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Id*. (citation and internal quotation marks omitted). With these required elements in mind, the court turns to the allegations contained in the SAC.

Here, the court has already determined (through analyzing the claims against the D.A.'s Office Defendants) that Fitzgerald failed to plead claims for malicious prosecution under the Fourth Amendment and for denial of equal protection under the laws, pursuant to the Fourteenth Amendment. Therefore, Fitzgerald's failure to train claim cannot arise from those alleged acts. Furthermore, because Fitzgerald's alleged denial of equal protection under the laws is the only basis for the failure to train claim being brought under the Fourteenth Amendment, the court must dismiss the failure to train claim to the extent that Fitzgerald brings it under the Fourteenth Amendment. Nonetheless, because the court has already determined that Fitzgerald adequately pleads a false arrest claim against Detectives Cruz and Frey, the court must consider the failure to train claim arising from Fitzgerald's alleged false arrest by Detectives Cruz and Frey.

With respect to Lehigh County's failure to train Detectives Cruz and Frey, the SAC contains the following allegations: (1) "Subordinate employees of Lehigh County acted under the color of state law – clothed in their authority as law enforcement officers and members of the District Attorney's office – to intentionally deprive Mr. Fitzgerald of his right to be free from unlawful searches, seizures, detention and malicious prosecution[,]" SAC at ¶ 117; (2) "Furthermore, upon information and belief, Defendants Cruz and Frey regularly conducted themselves in the manner described herein[,]" *id.* at ¶ 118; (3) "Lehigh County knew, or should have known, of the behavior of Defendants Cruz and Frey; and the County failed to take all necessary and proper corrective measures to ensure they did not violate individuals' well-established constitutional rights," *id.* at ¶ 119; and (4) "Lehigh County's failures, as described herein, evidence that it was deliberately indifferent to the Plaintiff's constitutional rights," *id.* at ¶ 120. Through these allegations, Fitzgerald has failed to allege any facts to support that Detectives Cruz and Frey had a pattern or history of making similar false arrests. He has also failed to allege any facts showing that a Lehigh County policymaker knew or should have known that the county's current training policies would fail to prevent his alleged false arrest. Finally, while the court recognizes that under certain narrow circumstances, a plaintiff may establish deliberate indifference based on a single incident, the SAC contains no factual allegations suggesting that Fitzgerald's arrest represents one of those narrow circumstances. Therefore, because Fitzgerald fails to include sufficient factual allegations demonstrating that Lehigh County was deliberately indifferent to his constitutional rights, the court will dismiss the failure to train and supervise claim.

d.    Section 1983 Claims for Civil Rights Conspiracy

Through Counts V and VI of the SAC, Fitzgerald brings section 1983 claims under the Fourth and Fifth Amendment for conspiracy to commit racial discrimination against Lehigh

County—alleging that it conspired to falsely arrest, falsely imprison, and maliciously prosecute him based on his race. SAC at ¶¶ 124-158. Lehigh County seeks dismissal of the claims because (1) the SAC does not contain factual allegations supporting a conspiracy, and (2) Fitzgerald fails to allege that his alleged constitutional deprivation was the result of a Lehigh County policy or custom. Lehigh County MTD at 10-11. As a preliminary matter, to the extent that Fitzgerald brings these claims under the Fourth and Fifth Amendments, they must be dismissed because as to the Fifth Amendment claim, he names no federal defendants, and as to the Fourth Amendment claim, racial discrimination claims must be brought under the Fourteenth Amendment. *See Watson v. Witmer*, 183 F. Supp. 3d 607, 613 (M.D. Pa. 2016); *Thompson v. Wagner*, 631 F. Supp. 2d 664, 671 (W.D. Pa. 2008) (citation omitted). Nevertheless, even if Fitzgerald had properly brought the civil rights conspiracy claims under the Fourteenth Amendment, the court must still dismiss them due to his failure to plead plausible facts to satisfy the elements of a civil rights conspiracy.

The court has already explained, with respect to his civil rights conspiracy claim against the D.A.'s Office Defendants, that Fitzgerald failed to state a claim upon which relief could be granted because he failed to include factual allegations supporting (1) a conspiracy between District Attorney Martin, A.D.A. Luksa, and Detectives Cruz and Frey, and (2) that their actions had a discriminatory effect on Fitzgerald. Because Fitzgerald fails to plead the elements necessary to state a section 1983 claim for conspiracy to commit racial discrimination, he fails to establish that he was deprived of a right, privilege, or immunity secured by the Constitution and any applicable laws. *See Mulholland*, 706 F.3d at 238. Without this underlying deprivation of a constitutional right, Lehigh County cannot be liable under section 1983, and the claim must fail. Therefore, the court will dismiss the section 1983 claims for conspiracy to commit racial

discrimination against Lehigh County, and the court need not consider the second step of the framework for municipal liability.

e.  Pennsylvania State Law Claims

Through Counts VII, VIII, and IX of the SAC, Fitzgerald brings claims under Pennsylvania state law against Lehigh County for malicious prosecution, false arrest, and false imprisonment.  SAC at ¶¶ 159-196.  Like the D.A.'s Office Defendants, Lehigh County seeks dismissal because retaining jurisdiction over them would not serve judicial economy, convenience, or fairness, if the court dismisses the section 1983 claims.  *See* Lehigh County MTD at 12.  The court's supplemental jurisdiction analysis over these claims with respect to Lehigh County is the same as the analysis as to the D.A.'s Office Defendants.  Therefore, because the court dismisses some (but not all) of the section 1983 claims over which the court has original jurisdiction, the court will not dismiss the Pennsylvania state law claims.[4]

### 3.  Leave to File a Third Amended Complaint

The decision to grant or deny leave to file an amended complaint is at the court's discretion.  *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (noting, "[w]e review the District Court's decision to deny the [plaintiff's] request to amend for abuse of discretion.") (citation omitted).  With respect to the grant or denial of leave to file an amended complaint, the Third Circuit has set forth the following guidance:

> Under the Federal Rules of Civil Procedure, a plaintiff is entitled to amend her claim once; courts may grant subsequent amendments "when justice so requires." Fed.R.Civ.P. 15(a).  While this Rule also requires that leave to amend should be "freely given," a district court has the discretion to deny this request if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the

---

[4] While Lehigh County does not seek dismissal of the Pennsylvania state law claims based on the Political Subdivision Tort Claims Act ("PTSA"), the PTSA likely immunizes Lehigh County from such claims.  The PTSA limits municipal liability in tort to claims arising out of enumerated categories.  *See* 42 Pa.C. S. § 8542; *Travis v. Deshiel*, 832 F. Supp. 2d 449, 455 (E.D. Pa. 2011).  False arrest, false imprisonment, and malicious prosecution do not fall within these categories.  *Id.*

> amendment would prejudice the other party. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). While a District Court has substantial leeway in deciding whether to grant leave to amend, when it refuses this type of request without justifying its decision, this action is "not an exercise of its discretion but an abuse of its discretion." *Id*.

*Id*. However, where a plaintiff does not request leave to file an amended complaint, the court need not permit him to do so. *Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) (holding that "the District Court did not abuse its discretion by denying [the plaintiff's] request to file an amended complaint, because, even though the R&R recommended the claims be dismissed without prejudice, [the plaintiff's] failure to file a motion for leave to amend or an amended complaint meant the District Court 'had nothing upon which to exercise its discretion'" (quoting *Ramsgate Ct. Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002).

Here, Fitzgerald does not seek leave to file a third amended complaint in his oppositions to the motions, and also did not seek leave to amend during oral argument before the court on May 26, 2017. Rather, he requested that to the extent appropriate, the court dismiss his claims without prejudice so that he may request leave to amend the complaint in the event that discovery develops facts not presently known to him. Accordingly, the court will not grant Fitzgerald leave to file a third amended complaint at this time. However, should Fitzgerald identify a basis to file a third amended complaint, he may file a motion for leave to do so as to any claim that that the court does not dismiss with prejudice, and the court will consider it in accordance with the aforementioned guidance.

### III.    CONCLUSION

As explained above, the court will grant in part and deny in part the D.A.'s Office Defendants' and Lehigh County's motions to dismiss. The court will grant the motions insofar as they sought to (1) dismiss the malicious prosecution claim as to District Attorney Martin and

A.D.A. Luksa as barred by absolute immunity, and will dismiss it as to Detectives Cruz and Frey and Lehigh County for failing to sufficiently plead a seizure; (2) dismiss the false arrest and false imprisonment claims as to District Attorney Martin for failing to plead supervisory liability, and will dismiss them as to Lehigh County for failing to plead that Detectives Cruz and Frey were acting pursuant to a Lehigh County policy; (3) dismiss the civil rights conspiracy claims against District Attorney Martin, A.D.A. Luksa, Detectives Cruz and Frey, and Lehigh County, for failing to plead racial discrimination and for failing to plead a conspiracy; and (4) dismiss the failure to train and supervise claim as to Lehigh County for failing to plead that Detectives Cruz and Frey have a pattern or history of making false arrests, and for failing to plead that a Lehigh County policymaker knew or should have known that the county's current training policies would fail to prevent Fitzgerald's false arrest. The court will deny the motions to dismiss insofar as they sought to (1) dismiss the false arrest and false imprisonment claims against Detectives Cruz and Frey, and (2) dismiss the state law claims because the court lacked supplemental jurisdiction. Because Fitzgerald has not sought leave to file a third amended complaint, the court will not grant him leave to do so at this time.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.