IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER FITZGERALD, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 16-3377 |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF LEHIGH, JAMES B. | : | |
| MARTIN, in his official capacity as the | : | |
| District Attorney of Lehigh County, and in | : | |
| his individual capacity, STEVEN LUKSA, | : | |
| in his official capacity as the First | : | |
| Assistant District Attorney, TODD FREY, | : | |
| in his official capacity as a County | : | |
| Detective, and in his individual capacity, | : | |
| and CHRISTOPHER CRUZ, in his official | : | |
| capacity as a County Detective, and in his | : | |
| individual capacity, | : | |
| | : | |
| Defendants. | : | |

## AMENDED MEMORANDUM OPINION

Smith, J.                                                                                           April 4, 2019

In August 2014, the plaintiff was driving a vehicle with his fiancée and two-year-old child as passengers. Two undercover county detectives were traveling behind the plaintiff's vehicle. The plaintiff believed that the county detectives were following his vehicle too closely, so he started to "brake check" them. Apparently, this did not cause the county detectives to distance themselves from the plaintiff's vehicle as he had intended, and the plaintiff eventually stopped his vehicle on the side of the road. The county detectives also stopped their vehicle near the plaintiff's vehicle and an encounter occurred during which the plaintiff showed the undercover detectives (who did not identify themselves as law enforcement officers) his loaded firearm in a "low ready" position. Upon seeing the firearm, the county detectives did not proceed further, and the plaintiff

1

drove away.  The county detectives contacted a township police department about this encounter and it ultimately resulted in the plaintiff's arrest.

The plaintiff was charged with multiple criminal offenses based on his having allegedly pointed a gun at the county detectives.  After a trial, a jury acquitted the plaintiff of all charges. The plaintiff then filed the instant action in which he asserted claims under 42 U.S.C. § 1983 and Pennsylvania state law against numerous defendants.  At this stage of the proceedings, the only defendants remaining in the case are the county, the county's district attorney and first assistant district attorney, and the two county detectives.  After a lengthy period of discovery, these defendants have now moved for summary judgment in their favor.

The court has thoroughly reviewed the applicable record and the parties' submissions. Despite construing the evidence of record in the light most favorable to the plaintiff and resolving all reasonable inferences in his favor, the court finds that summary judgment in favor of the defendants on the plaintiff's federal claims is appropriate here because the plaintiff did not suffer any constitutional violations as a matter of law.  Because the court disposes of all federal claims in this case, the court declines to exercise supplemental jurisdiction over the remaining state law claims and such claims are dismissed without prejudice.

# I.  PROCEDURAL HISTORY

The plaintiff, Christopher Fitzgerald ("Fitzgerald"), initiated this action by filing a complaint on June 24, 2016, alleging various federal constitutional violations and state law claims against the defendants, Christopher Cruz ("Detective Cruz"), the Department of Corrections for Lehigh County, Todd Frey ("Detective Frey"), Edward D. Hozza, Jr. ("Hozza"), Linda Kulp ("Kulp"), Lehigh County, the Lehigh County District Attorney's Office, Assistant District Attorney Steven Luksa ("ADA Luksa"), Michael Marks ("Marks"), District Attorney James B. Martin ("DA Martin"), Tom Muller ("Muller"), Raymond Seiling ("Seiling"), Joseph Stauffer ("Stauffer"), Edward Sweeney ("Sweeney"), Whitehall Township, the Whitehall Township Board of Commissioners, and the Whitehall Township Police Department a/k/a the Whitehall Township Bureau of Police (collectively the "Original Defendants").[1]  *See generally* Compl. at 15–26, Doc. No. 1.  After Fitzgerald effected service of process on all defendants, the court went through several rounds of motions to dismiss filed by the various defendants.  First, Muller, Sweeney, and Lehigh County, collectively, and the Whitehall Defendants, separately, moved to dismiss the complaint.  Doc. Nos. 8, 9.  The court ultimately denied both motions as moot upon Fitzgerald's filing of an amended complaint.  Am. Compl., Doc. No. 17; Order, Doc. No. 24.  Next, the Original Defendants filed motions to dismiss the amended complaint.  Doc. Nos. 20–22.  After oral argument, the court granted the Original Defendants' motions to dismiss and dismissed the amended complaint without prejudice to permit Fitzgerald to file a second amended complaint.  Order, Doc. No. 31.  On December 20, 2016, Fitzgerald filed a second amended complaint ("SAC") against most of the Original Defendants.[2]  Doc. No. 34.

---

[1] The court refers to the following defendants as the "Whitehall Defendants": Whitehall Township, the Whitehall Township Police Department a/k/a the Whitehall Township Bureau of Police, the Whitehall Township Board of Commissioners, Kulp, Seiling, Marks, and Hozza.

[2] Fitzgerald no longer included the Lehigh County District Attorney's Office, Stauffer, Hozza, Muller, Sweeney, the Lehigh County Department of Corrections, and the Whitehall Township Board of Commissioners as defendants when

The named defendants separately moved to dismiss the SAC. [3]  Doc. Nos. 35–37.  The court heard oral argument on the motions on May 26, 2017.  On May 30, 2017, the court entered an order which (1) by Fitzgerald's agreement, dismissed the claims against the remaining Whitehall Defendants without prejudice, and (2) denied their motion to dismiss as moot.  Order, Doc. No. 47.  The court resolved the remaining motions to dismiss via a memorandum opinion and order entered on August 3, 2017.  Doc. Nos. 49, 50.  In the memorandum opinion and order, the court granted parts of the motion to dismiss filed by DA Martin, ADA Luksa, Detective Cruz, and Detective Frey and (1) dismissed with prejudice Fitzgerald's (a) official capacity claims against them and (b) section 1983 malicious prosecution claim against DA Martin and ADA Luksa, and (2) dismissed without prejudice Fitzgerald's (a) malicious prosecution claim against Detective Cruz and Detective Frey, (b) section 1983 false arrest and false imprisonment claims against DA Martin, and (c) section 1983 civil conspiracy claims against DA Martin, ADA Luksa, Detective Cruz, and Detective Frey.  Aug. 3, 2017 Mem. Op. at 11–12, 13–29, Doc. No. 49; Aug. 3, 2017 Order at 1–2, Doc. No. 50.  The court denied the motion to the extent it sought dismissal of Fitzgerald's (1) section 1983 false arrest and false imprisonment claims against Detective Cruz and Detective Frey, and (2) state law claims against DA Martin, ADA Luksa, Detective Cruz, and

---

he filed the SAC.  SAC at 1–4.  The plaintiff brought the following claims in the SAC: (1) malicious prosecution under 42 U.S.C. § 1983 against DA Martin, Lehigh County, ADA Luksa, Detective Cruz, and Detective Frey; (2) "false arrest/false imprisonment" under section 1983 and the Fourth Amendment against DA Martin, Detective Cruz, Detective Frey, Lehigh County, Kulp, Seiling, Marks, and Whitehall Township; (3) "deliberately indifferent and/or illegal policies, practices, customs, training and supervision" under section 1983 against Whitehall Township and the Whitehall Township Police Department; (4) "deliberately indifferent and/or illegal policies, practices, customs, training and supervision" under section 1983 against Lehigh County; (5) malicious prosecution under section 1983 against DA Martin, Detective Cruz, Detective Frey, ADA Luksa, and Lehigh County; (6) "false arrest/false imprisonment" under section 1983 against DA Martin, Detective Cruz, Detective Frey, Lehigh County, Kulp, Seiling, Marks, and Whitehall Township; (7) "malicious prosecution under Pennsylvania state law" against Lehigh County, DA Martin, ADA Luksa, Detective Cruz, and Detective Frey; (8) "false imprisonment under Pennsylvania state law" against DA Martin, Detective Cruz, Detective Frey, Lehigh County, Kulp, Seiling, Marks and Whitehall Township; and (9) "false arrest under Pennsylvania state law" against DA Martin, Detective Cruz, Detective Frey, Lehigh County, Kulp, Seiling, Marks and Whitehall Township.  *See generally* SAC at 15–35.

[3] DA Martin, ADA Luksa, Detective Cruz, and Detective Frey jointly filed a motion to dismiss, *see* Doc. No. 35, Lehigh County filed its own motion to dismiss, *see* Doc. No. 36, and Whitehall Township, the Whitehall Township Police Department, Kulp, Seiling, and Marks jointly filed a motion to dismiss, *see* Doc. No. 37.

Detective Frey.  Aug. 3, 2017 Mem. Op. at 19–22, 29–30; Aug. 3, 2017 Order at 2.  Concerning

Lehigh County's motion to dismiss, the court granted the motion in part and dismissed without

prejudice Fitzgerald's (1) section 1983 malicious prosecution claim, (2) section 1983 false arrest

and false imprisonment claims, (3) section 1983 failure to train and supervise claim, and (4) section

1983 civil rights conspiracy claims.  Aug. 3, 2017 Mem. Op. at 30–40; Aug. 3, 2017 Order at 2–

3.  The court denied the motion to the extent it sought dismissal of the state law claims.  Aug. 3,

2017 Mem. Op. at 40; Aug. 3, 2017 Order at 3.

　　　The case proceeded through a lengthy period of discovery and, on June 14, 2018, Lehigh

County filed a motion for summary judgment.  Doc. No. 73.  With leave of court, Fitzgerald filed

a third amended complaint ("TAC") on June 29, 2018, in which he added a section 1983 claim for

supervisory liability under *Monell v. Department of Social Services of City of New York*, 436 U.S.

658 (1978) against Lehigh County and DA Martin.  *See* Order, Doc. No. 81; TAC at 22 (Count I),

Doc. No. 82.  In the TAC, Fitzgerald presents five claims:[4] (1) violation of civil rights under section

1983 – based on *Monell* for failure to train and supervise against DA Martin, in his official

capacity,  and Lehigh County;[5] (2) false arrest and false imprisonment under section 1983 and the

Fourth Amendment against Detective Cruz and Detective Frey (collectively the "Detectives"); (3)

malicious prosecution under Pennsylvania law against all defendants; (4) false imprisonment under

Pennsylvania law against DA Martin, the Detectives, and Lehigh County; and (5) false arrest under

Pennsylvania law against DA Martin, the Detectives, and Lehigh County.  TAC at 22–37.

---

[4] The TAC mislabels Count III as Count VII and Count V as Count IX.  *See* TAC at 31–35.

[5] The court grants summary judgment as to Fitzgerald's reasserted *Monell* claim against DA Martin in his official capacity because it is duplicative of his *Monell* claim against Lehigh County.  Aug. 3, 2017 Mem. Op. at 10–11. Additionally, the court notes, to the extent Fitzgerald appears to raise an Equal Protection claim in his TAC, *see* TAC ¶¶ 195a–c, 208a-c, 219a–c, that Fitzgerald confirmed during oral argument that he did not reassert such claims in his TAC.

On August 1, 2018, Lehigh County filed a motion for summary judgment on all claims asserted against it in the TAC. Doc. No. 88. DA Martin, ADA Luksa, and the Detectives (the "Individual Defendants") collectively filed a separate motion for summary judgment on all claims raised in the TAC. Doc. No. 89. To the extent that Lehigh County's previously filed motion for summary judgment addresses the state law claims raised in the TAC, the motion is also before the court.[6] Doc. No. 73. Fitzgerald filed a joint response in opposition to the defendants' motions for summary judgment on August 24, 2018. Doc. Nos. 93–95. Lehigh County and the Individual Defendants separately field reply briefs in response to Fitzgerald's opposition to the motions for summary judgment on September 5, 2018, and September 6, 2018, respectively. Doc. Nos. 98, 99. The court held oral argument on the motions for summary judgment on September 19, 2018. The motions are ripe for disposition.

## II.    DISCUSSION

### A.    Standard of Review – Motions for Summary Judgment

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J.*

---

[6] After the court granted leave for Fitzgerald to file a TAC, the parties agreed that the court would consider any opposition to Count I of the TAC in the parties' motions for summary judgment. *See* June 29, 2018 Order at 1, Doc. No. 81. Lehigh County's first motion for summary judgment also raised issues related to the plaintiff's failure to renew federal claims in a TAC after the court dismissed those claims. *See* Br. in Supp. of Def. Cty. of Lehigh's Mot. for Summ. J. at 3 ("Whether Fitzgerald's federal claims must be dismissed with prejudice, where Fitzgerald has not moved to file a third amended complaint for the purpose of renewing the federal claims based upon evidence disclosed through pre-trial discovery?"), Doc. No. 73-1. Because Fitzgerald renewed his section 1983 claims against the Detectives, this issue is no longer before the court.

*State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute").  The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production.  *Anderson*, 477 U.S. at 252.  Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment.  *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor").  Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide

some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Thus, it is not enough to "merely [] restat[e] the allegations" in the complaint; instead, the non-moving party must "point to concrete evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 F. App'x 743, 745–46 (3d Cir. 2005) (citing *Celotex*, 477 U.S. at 322). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted). Further, when one party's claims are "blatantly contradicted by the record, so that no reasonable jury could believe it," the court should not take those claims as true for the "purposes of ruling on a Motion for Summary Judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Undisputed Material Facts

On August 29, 2014, Fitzgerald was driving with his then fiancée and child. Br. in Supp. of Mot. for Summ. J. of Defs., James B. Martin, Steven Luksa, Christopher Cruz, and Todd Frey

("Individual Defs.' Br.") at ¶¶ 7, 11, Doc. No. 89;[7] Pl.'s Omnibus Resp. in Opp'n to Defs.' Mots. For Summary J. ("Pl.'s Omnibus Resp."), Ex. 1 at ¶¶ 7, 11, Doc. No. 93-1 (hereinafter "Pl.'s Resp. to Individual Defs.' Facts"). During his drive, Fitzgerald noticed a gray Infiniti M45 (the "Infiniti") driving closely behind him on MacArthur Road.[8] *See* Br. in Supp. of Def. Cty. of Lehigh's Mot. for Summ. J., Ex. 1 at ¶ 1, Doc. No. 88-2 (hereinafter "Cty.'s Facts"); Pl.'s Omnibus Resp., Ex. 2, at ¶ 1, Doc. No. 93-2 (hereinafter "Pl.'s Resp. to Cty.'s Facts"); Individual Defs.' Facts at ¶ 10; Pl.'s Resp. to Individual Defs.' Facts at ¶ 10. When MacArthur Road became two lanes, Fitzgerald remained in the left lane and the Infiniti continued driving behind him. *See* Cty.'s Facts at ¶¶ 3–4; Pl.'s Resp. to Cty.'s Facts at ¶¶ 3–4; Individual Defs.' Facts ¶¶ 11–12; Pl.'s Resp. to Individual Defs.' Facts at ¶¶ 11–12. At this point, Fitzgerald became concerned about the proximity between his car and the Infiniti. *See* Cty.'s Facts at ¶ 3; Pl.'s Resp. to Cty.'s Facts at ¶ 3; Individual Defs.' Facts at ¶ 11; Pl.'s Resp. to Individual Defs.' Facts at ¶ 11. To obtain space between his vehicle and the Infiniti, Fitzgerald proceeded to tap on his breaks (*i.e.*, "brake check") the Infiniti. *See* Cty.'s Facts at ¶¶ 4–5; Pl.'s Resp. to Cty.'s Facts at ¶¶ 4–5; Individual Defs.' Facts at ¶¶ 11–12; Pl.'s Resp. to Individual Defs.' Facts at ¶¶ 11–12.[9] After he "brake checked" the Infiniti several times, Fitzgerald changed lanes into the right lane. *See* Cty.'s Facts at ¶¶ 5–6; Pl.'s Resp. to Cty.'s Facts at ¶¶ 5–6; Individual Defs.' Facts at ¶ 13; Pl.'s Resp. to Individual Defs.' Facts at ¶ 13. Once he changed lanes, Fitzgerald voluntarily stopped his vehicle on the right side

---

[7] The Individual Defendants included their statement of material, undisputed facts in part II of their brief in support of their motion for summary judgment. *See* Individual Defs.' Br. at 3–7. Part II of their brief is hereinafter referred to as "Individual Defs.' Facts."

[8] The defendants do not concede that the Detectives were driving too closely to Fitzgerald; however, this fact is immaterial to the court's resolution of the instant motions. *See Anderson*, 477 U.S. at 248 (defining material fact as one which "might affect the outcome of the suit under governing law"). Regardless of whether the Infiniti was following Fitzgerald's vehicle too closely, Fitzgerald decided to act in a manner as if it was doing so. Nonetheless, for purposes of resolving this motion, the court will follow Fitzgerald's version of this fact and treat it as true for purposes of analyzing the instant motions.

[9] The parties dispute why Fitzgerald proceeded to "brake check" the Infiniti; however, all agree that he proceeded to tap on his brakes in a manner described as "brake checking." *See* Cty.'s Facts at ¶¶ 4–5; Pl.'s Resp. to Cty.'s Facts at ¶¶ 4–5; Individual Defs.' Facts at ¶ 11; Pl.'s Resp. to Individual Defs.' Facts at ¶ 11.

of the road.[10]  *See* Cty.'s Facts at ¶ 6; Pl.'s Resp. to Cty.'s Facts at ¶ 6; Individual Defs.' Facts at

¶ 13; Pl.'s Resp. to Individual Defs.' Facts at ¶ 13.  Notably, Fitzgerald does not allege that the

Detectives attempted to pull over his vehicle.  *See* Individual Defs.' Br., Ex. B at 71–72 ("Q: And

then you eventually come to a stop? A: It was like I rolled to a stop, sure."), Doc. No. 91-4

(hereinafter "Fitzgerald Dep.").  After Fitzgerald stopped his vehicle, the Infiniti also pulled over

to the side of the road.  *See* Cty.'s Facts at ¶ 9; Pl.'s Resp. to Cty.'s Facts at ¶ 9; Individual Defs.'

Facts at ¶ 15; Pl.'s Resp. to Individual Defs.' Facts at ¶ 15.  Once parked, the Infiniti did not block

in Fitzgerald's vehicle.  *See* Individual Defs.' Facts at ¶ 16 ("The Infiniti was not blocking

Plaintiff's lane of traffic and Plaintiff could have driven away if he chose to do so."); Pl.'s Resp.

to Individual Defs.' Facts at ¶ 16 ("It is admitted only that the Detectives' Gray Infiniti was not

blocking Fitzgerald."); Fitzgerald Dep. at 48 ("Q.  At any point in time, did the gray Infiniti cut in

front of you and block your lane of traffic?  A.  It did not get directly in front of me.").

  The parties dispute several facts about what occurred next; however, the court will describe

those facts as asserted by Fitzgerald because "[t]o the extent that facts are disputed, all doubts are

to be resolved in favor of the non-moving party."  *Bogus v. Am. Speech and Hearing Ass'n*, 582

F.2d 277, 291 (3d Cir. 1978) (citations omitted).  According to Fitzgerald, after the Infiniti parked,

Detective Frey (in plain clothes)[11] exited the vehicle on foot and began to approach Fitzgerald's

---

[10] The parties dispute where in the road Fitzgerald stopped.  *Compare* Cty.'s Facts at ¶ 6 ("Fitzgerald moved his vehicle from the left lane into the right lane and came to a stop in the right lane.") *and* Individual Defs.' Facts at ¶ 13 ("Plaintiff then pulled his vehicle into the right-hand lane of traffic and came to a complete stop."), *with* Pl.'s Resp. to Cty.'s Facts at ¶ 6 ("Admitted in part; denied in part.  It is admitted only that Mr. Fitzgerald switched to the right lane of traffic.  It is denied that he stopped in the center of the right lane; rather, Mr. Fitzgerald stopped nearly on the right curb." (internal citations omitted)) *and* Pl.'s Resp. to Individual Defs.' Facts at ¶ 13 (same).  The court does not consider this fact to be material because it was not part of the alleged basis for Fitzgerald's subsequent arrest.

[11] The parties do not dispute that the Detectives were in plain clothes and driving an unmarked car during the incident.  *See* Individual Defs.' Facts at ¶ 17; Pl.'s Resp. to Individual Defs.' Facts at ¶ 17; Cty.'s Facts at ¶¶ 19–20; Pl.'s Resp. to Cty.'s Facts at ¶¶ 19–20.  Additionally, it is undisputed that Fitzgerald did not know that the men driving the Infiniti were law enforcement officers.  *See* Cty.'s Facts at ¶¶ 19–20; Pl.'s Resp. to Cty.'s Facts at ¶¶ 19–20; Individual Defs.' Facts at ¶ 17; Pl.'s Resp. to Individual Defs.' Facts at ¶ 17.

car.[12]  *See* Fitzgerald Dep. at 76 ("At that point, I saw the door opening and a man appearing to approach the vehicle.  He was beginning to walk towards my car.  So, within seconds, I'm reaching for my firearm (indicating)."), *with* Individual Defs.' Br., Ex. E at 60 ("Q: . . . Did you exit the car?  A: No."), Doc. No. 91-10.   After observing Detective Frey walk towards his vehicle, Fitzgerald began to take his handgun out from underneath his driver's side seat.[13]  Fitzgerald Dep. at 76.  Fitzgerald then held his gun at chest height, without his finger on the trigger, pointed downward in a "low-ready" position.[14]  Fitzgerald Dep. at 82–83.  At a minimum, the loaded gun was visible to Detective Frey.  *See* Individual Defs.' Br., Ex. F at 63 ("The gun was at center mast of the windshield.  It looked like it was right at me.  It looked like a cannon."), Doc. No. 91-12 ("Detective Cruz Dep."); Detective Frey Dep. at 59 ("The car door opens up, and the person inside turns around and points a black handgun at me (indicating)."); Fitzgerald Dep. at 52 (Q: "Okay. So, at that point, you knew that they had seen your gun, correct?" A: "Yes").

Once Detective Frey noticed the gun, he retreated to the Infiniti.[15]  Individual Defs.' Facts at ¶ 25; Pl.'s Resp. to Individual Defs.' Facts at ¶ 25.  Upon Detective Frey's retreat to the Infiniti, Fitzgerald proceeded to drive away.  Individual Defs.' Facts at ¶¶ 28, 30; Pl.'s Resp. to Individual Defs.' Facts at ¶¶ 28, 30; Cty.'s Facts at ¶¶ 43–44; Pl.'s Resp. to Cty.'s Facts at ¶¶ 43–44.  Detective Frey then called 9-1-1.[16]  After calling 9-1-1, the Detectives proceeded to follow Fitzgerald's

---

[12]   The Individual Defendants assert that Detective Frey did not exit the Infiniti.  *See* Individual Defs.' Mot. for Summary J., Ex. E, at 60 ("Q: …Did you exit the car? A: No."), Doc. No. 91-10 (hereinafter "Detective Frey Dep.").  Instead, they state that when the Infiniti parked, Fitzgerald "observed" the passenger side door opening.  Individual Defs.' Facts at ¶¶ 17–18.

[13] According to the Individual Defendants, Fitzgerald witnessed the Infiniti park and the passenger side door open. *See* Individual Defs.' Facts at ¶ 18.  After removing his gun from underneath his seat, Fitzgerald then allegedly opened his driver's side door and turned to face the Detectives.  *See id.* at ¶¶ 22–23.  While turned to face the Detectives, Fitzgerald then allegedly pointed his gun at them.  *See id.* at ¶ 22.

[14] For a demonstrative re-enactment by Fitzgerald, *see* Individual Defs.' Br., Ex. J at 1:13:35, Doc. No. 91-22.

[15] Because the Individual Defendants do not concede that Detective Frey exited the vehicle, they only admit that upon seeing the gun, the Infiniti reversed and drove away.  *See* Individual Defs.' Facts at ¶ 25.

[16] The parties did not provide a transcript of Detective Frey's 9-1-1 call; however, the parties do not appear to dispute the substance of what Detective Frey stated to the operator or that he made the call.  *See* Individual Defs.' Facts at ¶ 28 ("While retreating to a safe distance Detective Frey called 9-1-1 and advised that there was a man with a gun in

vehicle.  Individual Defs.' Facts at ¶¶ 28, 30; Pl.'s Resp. to Individual Defs.' Facts at ¶¶ 28, 30; Cty.'s Facts at ¶¶ 43–44; Pl.'s Resp. to Cty.'s Facts at ¶¶ 43–44.  Fitzgerald was ultimately arrested by the Whitehall Township Police Department at a HHGreg parking lot.  Individual Defs.' Facts at ¶ 30; Pl.'s Resp. to Individual Defs.' Facts at ¶ 30.  The Detectives were also present at the arrest, but they did not actually arrest Fitzgerald.  Individual Defs.' Facts at ¶ 31; Pl.'s Resp. to Individual Defs.' Facts at ¶ 31.

After his arrest, the Lehigh County District Attorney's office charged Fitzgerald with simple assault by physical menace for "pointing" the loaded gun at the Detectives in a threatening manner.[17]  Individual Defs.' Facts at ¶ 38; Pl.'s Resp. to Individual Defs.' Facts at ¶ 38.  Fitzgerald was tried before a jury with the jury ultimately finding him not guilty of all charges.  Individual Defs.' Facts at ¶¶ 40, 42; Pl.'s Resp. to Individual Defs.' Facts at ¶¶ 40, 42.

---

the subject vehicle."); Pl.'s Resp. to Individual Defs.' Facts at ¶ 28 (stating that Fitzgerald does not admit "veracity" of Detective Frey's testimony but not citing record evidence to rebut statement).  According to Detective Frey, he informed the County "Comm" Center that "[t]here's a white car, possibly a Hispanic male, just pulled a handgun on us.  It's a black handgun.  And he's northbound on MacArthur Road."  Detective Frey Dep. at 72; *see also* Detective Cruz Dep. at 90 (describing Detective Frey as calling 911).

[17] Simple assault by physical menace is a crime under Pennsylvania law for "attempts by physical menace to put another in fear of imminent serious bodily injury."  18 Pa. C.S. § 2701(a)(3).  The court notes that Fitzgerald alleges that he was charged with two counts of simple assault by physical menace, two counts of recklessly endangering another person, one count of reckless driving, and one count of careless driving.  *See* TAC at ¶ 94.  The court is unable to confirm these charges because the criminal docket in Fitzgerald's underlying proceeding is unavailable on public databases and the parties did not attach it to their motions.  Moreover, the parties address only whether the Detectives had probable cause to arrest Fitzgerald for simple assault.  *See, e.g.*, Individual Defs.' Br. at 9 ("Plaintiff in this matter was charged with simple assault."); Br. in Supp. of Def. Cty. of Lehigh's Mot. for Summ. J., Ex. 1 at 7–8 (describing elements required for "simple assault" under Pennsylvania law), Doc. No. 88-1 ("Cty.'s Br."); Pl.'s Omnibus Resp. at 23 ("The Individual Defendants cite a series of Pennsylvania cases in order to illustrate how Mr. Fitzgerald's behavior provided probable cause to arrest for simple assault.").  To the extent Fitzgerald intended to raise a false arrest claim based on the two counts of recklessly endangering another person, one count of reckless driving, or one count of careless driving, the parties, including Fitzgerald, do not address it in their summary judgment papers.  However, even if Fitzgerald intended to raise a claim for false arrested based on the other charges, the court's analysis with respect to simple assault charge is dispositive of Fitzgerald's claim for false arrest and false imprisonment.  *See Wright v. City of Phila.*, 409 F.3d 595, 604 (3d Cir. 2005) ("Finding no constitutional violation [as to the plaintiff's arrest for criminal trespass], we reverse the District Court's denial of summary judgment based on qualified immunity.  In light of this decision, we need not address whether probable cause existed for the other two felony offenses, burglary and theft, with which she was charged.").

### C.    <u>Analysis</u>

**1.    Section 1983 Claims – False Arrest and False Imprisonment Against the Detectives**

Fitzgerald brings a claim of false imprisonment and false arrest pursuant to section 1983 against the Detectives for their role in causing his arrest and detention. *See* TAC at 28 (Count II). The Detectives claim that they are entitled to summary judgment because probable cause existed for Fitzgerald's arrest and they are entitled to qualified immunity. Individual Defs.' Br. at 8–18. The court finds that (1) there was no violation of Fitzgerald's constitutional rights and (2), even if there was a violation, such rights were not clearly established at the time of the incident. Therefore, the Detectives have qualified immunity with respect to Fitzgerald's false arrest and false imprisonment claims under section 1983.

Section 1983 allows recovery for civil damages for violations of federal rights by any "person" acting "under color of" state law. 42 U.S.C. § 1983; *see West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). A government official is protected from suit under section 1983 if he or she is entitled to qualified immunity. *Berg v. Cty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000). "[Q]ualified immunity is important to society as a whole, and . . . as immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks and citations omitted). Whether an official is entitled to qualified immunity entails a two-part analysis: "First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Second, we consider whether, in light of the specific context of the case, "the right was clearly established." *Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017) (internal citations omitted), *cert. denied sub nom.*,

138 S. Ct. 1263 (2018). "[T]he burden of persuasion at a summary judgment proceeding [is] on the party asserting the affirmative defense of qualified immunity." *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014); *see also Burns v. PA Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011) ("The burden of establishing qualified immunity falls to the official claiming it as a defense." (internal citation omitted)).

"[C]learly established law should not be defined at a high level of generality." *White*, 137 S. Ct. at 552 (internal citation and quotation marks omitted)). Instead, it must be "'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A right is clearly established if a reasonable official would understand that their actions, at the time of the incident, would violate the law. *See Spiker v. Whittaker*, 553 F. App'x 275, 279 (3d Cir. 2014) ("A right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The test has been described as "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *White*, 137 S. Ct. at 551 (internal citation and quotation marks omitted). Courts may address either prong of the test first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Fitzgerald's false arrest and false imprisonment claims fail because the Detectives had probable cause to arrest him.[18] To satisfy the requirements of the Fourth Amendment, a law enforcement officer must make an arrest based on probable cause. *See Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) ("An arrest may violate the standards of the Fourth

---

[18] Fitzgerald's two claims under the Fourth Amendment are false arrest and false imprisonment. Courts analyze false arrest and false imprisonment together because both causes of action turn on whether the officer had probable cause. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) ("[A]n arrest based on probable cause could not become the source of a claim for false imprisonment."). An officer can still be liable under Section 1983 "for causing an arrest" even if they are not the arresting officer. *See Berg*, 219 F.3d at 271–72 ("As a general rule, a government official's liability for causing an arrest is the same as for carrying it out."). As such, "§ 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion." *Id.* at 272. Because Detectives Cruz and Frey's "intentional acts set the arresting officer in motion," they are proper defendants in these causes of action even though they did not effectuate the arrest themselves. *Id.*

Amendment if effected with unreasonable force, or if made without probable cause to believe that a crime has been committed[.]" (internal citations omitted)). Courts employ an objective and fact intensive test to determine whether probable cause existed at the time of the arrest. *See Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467–68 (3d Cir. 2016) (stating that probable cause is not a "rigid" test, but rather, courts should employ a "'totality-of-the-circumstances' approach to probable cause determination" (quoting *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983)). Thus,

> "[p]robable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). Put another way, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). The probable cause standard thus provides individuals protection "against unreasonable searches and seizures," U.S. Const. amend. IV, while simultaneously enabling investigating officers to act quickly—before necessarily obtaining evidence sufficient to prove guilt beyond a reasonable doubt—to effect an arrest. "[T]he standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005).
>
> As the Supreme Court has observed, "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (alteration in original).

*Dempsey*, 834 F.3d at 468 (alterations in original).

Generally, probable cause is a factual determination for the jury, *Groman*, 47 F.3d at 635, "[n]evertheless, summary judgment may be granted on the question of probable cause if a court concludes that 'the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding.'" *Dempsey*, 834 F.3d at 468 (quoting *Sherwood*, 113 F.3d at 401 (alteration in original)). The summary judgment standard does not require the court to

disregard evidence which is unfavorable to the nonmoving party. *See id.* ("While it is axiomatic that at the summary judgment stage, we view the facts in the light most favorable to the nonmoving party, it does not follow that we exclude from the probable cause analysis unfavorable facts an officer otherwise would have been able to consider."). "Instead, we view *all* such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a 'fair probability' that a crime occurred." *Id.* (emphasis in original); *see also Joseph v. W. Manheim Police Dep't*, 131 F. App'x 833, 835 (3d Cir. 2005) (per curiam) (finding probable cause where officer witnessed plaintiff's erratic driving and plaintiff smelled of alcohol).

In the present case, the Detectives had probable cause to arrest Fitzgerald for simple assault. "Whether any particular set of facts suggest that an arrest is justified by probable cause requires an examination of the elements of the crime at issue." *Wright*, 409 F.3d at 602. Under Pennsylvania law, a "person is guilty of assault if he . . . attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa. C.S. § 2701(a)(3); *see* 18 Pa. C.S. § 2301 (defining "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ[]"). One is not required to "point or shoot a firearm in order to be found guilty of simple assault by physical menace." *Commonwealth v. Olsen*, No. 1861 WDA 2016, 2017 WL 6523267, at *4 (Pa. Super. Dec. 21, 2017); *see also Commonwealth v. Plank*, No. 3198 EDA 2013, 2014 WL 10803143, at *4 (Pa. Super. Aug. 25, 2014) ("[T]here is no case law in this Commonwealth that mandates that an individual cannot be found guilty of the crime of simple assault by physical menace, absent having pointed a firearm directly at the victim."). Instead, the individual's behaviors, under the totality of the circumstances, can be sufficient. *Wright*, 409 F.3d at 602; *see also Plank*, 2014 WL 10803143, at *4 (affirming verdict of simple

assault where defendant "twice brandished his weapon" and made gestures victim viewed as threatening); *Commonwealth v. Little*, 614 A.2d 1146, 1154–55 (Pa. Super. 1992) (holding that verdict not against weight of evidence when defendant "never pointed her shotgun directly at the deputies or verbally threatened to shoot them" because "her actions certainly constituted an implied threat, which was every bit as menacing and frightening to the deputies[]"). *Cf. Barna*, 42 F.3d at 819 (finding that once plaintiff "brandished weapons in response to the officers' conduct, the officers were justified in effecting his arrest pursuant to New Jersey's aggravated assault statute").

Viewing the totality of all the facts available to the Detectives, a reasonable person would have believed "that an offense has been or is being committed" by Fitzgerald. *Dempsey*, 834 F.3d at 468 (internal citation and quotation marks omitted). Here, when Detective Frey called 911, the Detectives witnessed (1) Fitzgerald driving in a manner they believed constituted reckless driving (*i.e.*, brake checking) and (2) escalate the encounter by brandishing a weapon[19] in a threatening manner. Detective Frey Dep. at 52, 57, 59, 63; Detective Cruz Dep. at 84, 89, 93; *see* Fitzgerald Dep. at 50, 52 (stating that he wanted individuals in other vehicle to see his weapon and for them to "back up."). Considering these facts, Fitzgerald's arguments that the Detectives lacked probable cause are unavailing.

Primarily, Fitzgerald argues that because his motivations were not to threaten and that he never pointed the gun, the Detectives necessarily lacked probable cause. *Compare* Individual Defs.' Facts at ¶ 24 ("Plaintiff wanted the occupants of the Infiniti to see his gun and Plaintiff wanted to use his gun to put the Detectives in fear for their safety and scare them off."), *with* Pl.'s Resp. to Individual Defs.' Facts at ¶ 24 ("Admitted in part; denied in part. It is admitted only that,

---

[19] Fitzgerald concedes that his loaded gun can cause serious bodily injury. *See* Fitzgerald Dep. at 34–35 (agreeing that his gun could cause serious bodily injury).

at all times, Plaintiff intended to deter his would be assailants by the sight of his firearm."). However, Fitzgerald's argument fails to recognize that the probable cause "standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright*, 409 F.3d at 603. Instead, the standard allows officers to make mistakes. *See id.* ("Although they may have made a mistake, their belief was not unreasonable in light of the information the officers possessed at the time."). Whether Fitzgerald intended to "deter" and not to "threaten," or merely made his gun visible without pointing it, are immaterial for purposes of probable cause because the test requires the court to ask what a reasonable police officer under the totality of the circumstances would have believed. *See id.* (finding probable cause to charge plaintiff with criminal trespass even after dismissal of charges against plaintiff, because officers' "belief was not unreasonable in light of the information the officers possessed at the time[]"). Here, it is reasonable that a police officer in this situation would have believed that there was probable cause to arrest Fitzgerald for simple assault because, even if Fitzgerald did not point the gun, an officer who *believes* a gun was brandished in a threatening manner has probable cause, even if that initial belief is subsequently determined to be incorrect. *See Groman*, 47 F.3d at 635 n.10 (holding that officers who were falsely informed by first officer on scene that plaintiff punched her had probable cause to arrest plaintiff because officers' actions are judged based on information available at time of arrest). Therefore, because "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction[,]" the Detectives had probable cause to arrest Fitzgerald. *Wright*, 409 F.3d at 602 (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)).

Even if the Detectives' behavior violated Fitzgerald's Fourth Amendment rights, they did not violate clearly established law at the time of the incident and are entitled to qualified immunity. Fitzgerald argues that the Detectives violated his Fourth Amendment rights when their actions

(*i.e.*, tailgating him in an unmarked car while undercover) began the chain reaction which culminated in his arrest. *See, e.g.*, Pl.'s Omnibus Resp. at 18 ("The Detectives forced Mr. Fitzgerald to react to *their* aggressive driving." (emphasis added)), Doc. No. 93. However, the court is unable to find any law, and Fitzgerald does not identify any, where on-duty police officers are held liable under section 1983 for investigating a traffic violation and then calling in behavior they believed to be unlawful (*i.e.*, brandishing a weapon in a manner the officer perceived as threatening) merely because the individual arrested believed the officers were committing a traffic violation themselves. *Cf. Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984) ("Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon."). Because "existing precedent must have placed the statutory or constitutional question beyond debate[,]" and Fitzgerald has failed to cite a single case indicating that the Detectives' behavior was unlawful, even if their conduct violated his Fourth Amendment rights, the Detectives are entitled to qualified immunity because such rights were not clearly established at the time of the incident. *White*, 137 S. Ct. at 551 (internal citation and quotation marks omitted); *see also Pearson*, 555 U.S. at 237 (2009) ("There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.").

### 2. Section 1983 *Monell* Claim Against Lehigh County

To succeed on a failure to train and/or supervise claim under *Monell*, Fitzgerald must prove: (1) Lehigh County had a policy, (2) the policy amounted to deliberate indifference to his constitutional rights, and (3) the policy was the moving force behind the constitutional violation. *See Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (citing *Monell*, 436 U.S. at 389–91). In certain cases, a single incident can be sufficient to establish *Monell* liability; however, "[l]iability in single-incident cases depends on '[t]he likelihood that the situation will recur and

19

the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223–24 (3d Cir. 2014) (second alternation in original) (quoting *Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). In all *Monell* claims, there must be a violation of a constitutional or statutory right before liability can attach. *Berg*, 219 F.3d at 275 (stating that plaintiff "must demonstrate that the *violation* of his rights was caused by either a policy or a custom of the municipality[]" (emphasis added)). Therefore, "a plaintiff advancing a municipal liability claim must establish (a) a violation of a federal right—which may not necessarily arise from the liability of an individual employee—and (b) a municipal policy or custom that caused the violation." *Butler v. Lamont*, 672 F. App'x 139, 142 (3d Cir. 2016) (internal quotation marks and citation omitted).

In the present case, the lack of any constitutional violation[20] is fatal to Fitzgerald's *Monell* claim and there is no cognizable right not to be tailgated by police officers under federal law. *See*

---

[20] Lehigh County also argued that the Detectives did not violate Fitzgerald's Fourth Amendment rights by "stopping" his vehicle. *See* Cty.'s Br. at 4-7. Fitzgerald did not address this argument in his omnibus response. *See generally* Pl.'s Omnibus Resp. Because Fitzgerald did not expressly bring this claim in the TAC or respond to Lehigh County's argument in his opposition papers, the court does not consider Fitzgerald to have properly raised it (to the extent Fitzgerald intended to assert such a claim). However, in the abundance of caution, the court notes that (1) the Detectives did not "seize" Fitzgerald under the Fourth Amendment and (2), even if they did, the seizure was constitutional.
  First, there was no stop because the Detectives made no show of authority to Fitzgerald (*e.g.*, never showed him a badge, were in an unmarked car, never identified themselves as law enforcement officers, and they were in plain clothes) and did not physically restrain his freedom of movement in any manner. *See* Individual Defs.' Br., Ex. C at 22 ("A. I stopped, sir."), Doc. No. 91-6 (hereinafter "Fitzgerald Trial Testimony"); Individual Defs.' Facts at ¶ 16 ("The Infiniti was not blocking Plaintiff's lane of traffic and Plaintiff could have driven away if he chose to do so."); Pl.'s Resp. to Individual Defs.' Facts at ¶ 16 ("It is admitted only that the Detectives' Gray Infiniti was not blocking Fitzgerald."); Detective Frey Dep. at 74 ("Q: How long did he stop? A: It happened real quick. The last brake check, the hard brake check, it was a quick stop. And then when he went over to the right lane, it was not as quick, but until he could open the door and point a handgun at us and we backed up, that's how long he was stopped."); Detective Cruz Dep. at 84 (describing Fitzgerald as pulling over "for no reason"). Under these circumstances, a reasonable person would feel free to walk away from the encounter with the Detectives. *See Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) ("The test provides that the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" (quoting *United States v. Mendenhall*, 446 U.S. 554 (1980)). *Cf. Couden v. Duffy*, 446 F.3d 483, 494 (3d Cir. 2006) (finding when there was no "show of authority," but restraint of freedom, that flight did not "negate seizure"). Therefore, the Detectives did not stop Fitzgerald within the meaning of the Fourth Amendment by pulling over next to his vehicle.
  Second, assuming *arguendo* that the Detectives "seized" Fitzgerald when they pulled up their car next to his on the side of the road, it was not unconstitutional. Police officers are permitted under the Fourth Amendment to stop

*Benn v. Universal Health Sys.*, 371 F.3d 165, 174 (3d Cir. 2004) ("Section 1983 does not provide a cause of action for violations of state statutes."). Therefore, the court will grant summary judgment in favor of Lehigh County with respect to Fitzgerald's *Monell* claim.

### 3. Fitzgerald's State Law Claims

Fitzgerald brings three state law claims: (1) malicious prosecution against Lehigh County, DA Martin, ADA Luksa, and the Detectives; (2) false imprisonment against Lehigh County, DA Martin, and the Detectives; and (3) false arrest against Lehigh County, DA Martin, and the Detectives. Because only the state law claims remain, the court must determine whether to exercise supplemental jurisdiction over those claims. In such circumstances, the court,

> "may decline to exercise supplemental jurisdiction" if the court "has dismissed all claims over which it has original jurisdiction." [28 U.S.C.] § 1367(c)(3). . . . [I]n most cases, pendent state law claims should be dismissed without prejudice "where the claim over which the district court has original jurisdiction is dismissed before trial." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). On the other hand, "[w]here the original federal jurisdiction claim is proceeding to trial . . . considerations [of judicial economy, convenience, and fairness to the parties] will normally counsel an exercise of district court jurisdiction over state claims based on the same nucleus of operative facts." *Id.*

*Cindrich v. Fisher*, 341 F. App'x 780, 789 (3d Cir. 2009) (per curiam).

Here, the court declines to exercise supplemental jurisdiction over Fitzgerald's state law claims. While certain factors weigh in favor of retention of jurisdiction (*e.g.*, lengthy discovery

---

and question motorists upon witnessing a suspected traffic violation. *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006). A traffic stop is lawful "when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *Id.* Here, even if the Detectives "seized" Fitzgerald, it was a lawful traffic stop because the Detectives witnessed Fitzgerald "brake checking" their vehicle. *See* Detective Frey Dep. at 73 ("Q: Would you describe brake checking as careless driving? A: Sure"); Detective Cruz Dep at 93–94 ("A: Well, its careless driving. It's reckless driving"). Brake checking appears to be a violation of state traffic laws because it constitutes careless and/or reckless driving, *see* 75 Pa. C.S. § 3736(a) ("Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."), however, even if the conduct would not actually amount to a traffic violation, the officers believed Fitzgerald committed such a violation at the time of the alleged seizure. Such a belief, "need not be factually accurate" if the officer "produce[s] facts establishing that [he] reasonably believed that a violation had taken place." *Delfin-Colina*, 464 F.3d at 398. Therefore, even accepting Fitzgerald's version of the events as true, there was no unconstitutional seizure during the incident on MacArthur Road.

has concluded, the state and federal law claims are based on the "same nucleus of operative fact"), *id.*, the court has dismissed all the federal claims and the parties addressed the state law claims and immunities cursorily. Ultimately, the court finds the lack of any federal claims in the case dispositive. *See, e.g.*, *Byrd v. Shannon*, 715 F.3d 117, 128 (3d Cir. 2013) (affirming district court's decision to decline supplemental jurisdiction over state law claims when no federal claims remained). Accordingly, the court will dismiss without prejudice Fitzgerald's state law claims.[21]

## III.   CONCLUSION

For the reasons set forth above, the court finds that the Detectives are entitled to qualified immunity for Fitzgerald's false arrest and false imprisonment claims under section 1983 because the Detectives did not violate his constitutional rights as a matter of law. Even if there was a violation, the right at issue was not clearly established at the time of the incident. In addition, Lehigh County is entitled to summary judgment on Fitzgerald's *Monell* claim. As a result, the court: (1) grants the defendants' motions for summary judgment as to Fitzgerald's federal law claims in full, and (2) declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses those claims without prejudice.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[21] While the court declines to exercise supplemental jurisdiction, Fitzgerald's state law claims likely will have great difficulty overcoming the applicable immunity issues and fail as a matter of law because, as described above, the Detectives had probable cause for his arrest and all three state law claims hinge on a determination of probable cause. *See Joseph*, 131 F. App'x at 835 (analyzing malicious prosecution and unreasonable search and seizure claims and explaining that both "turn" on whether officer had probable cause together); *Renk*, 641 A.2d at 293 (holding that claim for false imprisonment requires: "(1) the detention of another person, and (2) the unlawfulness of such detention"); *Alleyne v. Pirrone*, 180 A.3d 524, 543 (Pa. Commw. 2018) ("Under Pennsylvania law, false arrest is synonymous with false imprisonment."), *appeal denied*, 194 A.3d 556 (Pa. 2018); *Combs v. Blowes*, No. 1561 C.D. 2013, 2015 WL 5162166, at *2 (Pa. Commw. Feb. 17, 2015) ("The existence of probable cause is a complete defense to a claim of malicious prosecution.").